| 33 | 713 |
| 35 | 394 |
| 33 | 713 |
| 39 | 473 |
| 33 | 713 |
| f46 | 768 |
| 33 | 713 |
| 48 | 611 |

# CHARLESTON.

## SMITH AND WIFE *v.* COUNTY COURT.

Submitted January 25, 1890.—Decided March 25, 1890.

DAMAGES—ROADS—DEFECTIVE HIGHWAYS—PERSONAL INJURIES —PROXIMATE CAUSE.

The plaintiff and a lady friend were driving a single horse, in a spring-wagon, along the road leading from the city of Charleston to the town of Malden, in Kanawha county. At a point in said road where it was from twelve to eighteen feet wide, two calves yoked together came suddenly from the pawpaw bushes, and frightened the horse, which the plaintiff had owned for two years, and regarded as gentle ; and he commenced backing, and continued so to do until he backed the wagon and its occupants and himself over the steep river bank, whereby the plaintiff was seriously and permanently injured. In a suit brought by said plaintiff against the County Court of Kanawha county to recover damages for the injuries sustained, it was proven by plaintiff that she could have managed the horse but for the narrowness of the road ; that she had travelled the same road two or three times a week for the previous two years without accident—and by another witness that the road was in good condition, smooth, and cindered, and that he had travelled said road two hundred times a year for sixteen years, driving all kinds of horses and teams, and had never met with an accident ; that the road at that point was wide enough for two teams to pass, and on one side of the road was a steep mountain which slipped into the road in wet times, and on the other side the river bank. *Held* that, under the circumstances of this case, the defendant was not liable for said injury.

*O. Johnson, S. Chapman, A. B. Littlepage* and *S. C. Burdett* for plaintiffs in error.

*S. D. Littlepage* and *Knight & Couch* for defendants in error.

ENGLISH, JUDGE:

An action of trespass on the case was brought to the February rules, 1888, in the Circuit Court of Kanawha county, by John W. Smith and Leonora Smith, his wife, against the County Court of Kanawha county. On the 23d day of March, 1888, on the plaintiff's motion, the case was remanded to rules, with leave to them to amend their declaration, and on the 3d day of January, 1889, the defendant appeared by counsel, and demurred to the plaintiff's declaration, which demurrer, being argued by counsel, and considered by the court, was overruled, and thereupon the defendant pleaded not guilty, and issue was therein joined; and thereupon a trial was had before a jury, which resulted in a verdict in favor of the plaintiffs for $750.00. The defendant then moved the court to set aside said verdict of the jury as being contrary to the law and the evidence, and award it a new trial, which motion the court, after consideration, overruled, to which action and ruling of the court the defendant excepted, and the court entered up judgment upon said verdict; and the defendant tendered a bill of exceptions to certain actions and rulings of the court, which was made a part of the record in the case; and the defendant applied for and obtained a writ of error and *supersedeas* to said judgment.

The facts set forth in the bill of exceptions show that the female plaintiff was driving a horse which she and her husband both regarded as gentle, returning home from Charleston in a spring wagon, accompanied by Miss Emma Jacob, along the road leading to her home in the town of Malden; that she had owned the horse for about two years, and had driven him from Malden to Charleston two or three times a week during that time, and had never known him to frighten; and that two calves came down from the hillside, out of the pawpaw bushes, and her horse became frightened, and commenced backing; that she tried to keep him in the road, but could not do so; that the horse backed until he backed across the road and over the river bank, a distance of about forty feet from the top of the river bank; that at the time

her horse became frightened she was driving next to the mountain, on the side of the road furthest from the river; that she tried to keep the horse in the road, but he was so badly frightened she could not do so, although he was a gentle horse, easily managed, and had never become frightened before; that the road at that point was about from eleven to eighteen feet wide; that she received injuries from said accident of a serious and permanent character, and was under the treatment of a physician during the entire summer; that she was keeping a boarding-house in the town of Malden, but had to give up the business on account of the injuries received, and since the accident had been unable to attend to her household affairs; that there was not room for two wagons to pass at the point where the accident occurred; that the road was in about the same condition it was during the two years that she had been driving over it; that it looked dangerous; that said plaintiff had always considered it dangerous, but she was willing to risk it if any one else was; that there was no other road by which she could return home; that she could have managed her horse had it not been for the narrowness of the road. This was, in substance, the testimony of the female plaintiff.

The testimony of J. W. Smith was, in substance, the same, fixing the width of the road, at the point where the accident occurred, at twelve feet, and stating that his wife is helpless now, unable to do any work; that she had to give up her boarding-house in Malden, and remain with him in Charleston, where his business is; that the road where the accident occurred, as far as it was made, was a good road, and the road was a favorite driving place between Charleston and Malden; that the slip from the mountain was not interfering with the road at the time of the accident, that he knew of.

J. E. Dana, a witness for the plaintiffs, proved that the road at that point was sixteen or eighteen feet wide; that the road was a favorite drive for pleasure; that he had driven along the road two hundred times a year, for sixteen years, with all kinds of horses and teams, and had never met with an accident, and had never heard of one happening on said road; that the mountain on the upper side

always slipped after a heavy rain, but the slips were always cleared away by parties in charge of the road; that the many slips had forced a curve in the road, throwing the road out close to the river bank; that the road was wide enough for two teams to pass; and that he, in driving, passed other teams at said point, and the road was as smooth as any road he had driven over in the county.

W. A. Bradford, a witness for plaintiffs, proved that he was well acquainted with the road at the point where the accident occurred; saw it next day after the accident; saw marks of the wagon wheel where it went over the bank; that the road was narrow at that point; that it was very difficult for two buggies to pass, but that they might, if they were careful; that he had known the road for forty years; that it had been narrow for five years; that it had been repaired, but not widened, and he thought it was a very dangerous place, but that there was plenty of room for one vehicle to pass in safety, if the horse did not become frightened; that there was a great deal of pleasure-driving on that road.

Dr. Thomas, another witness for the plaintiffs, stated that, a short time before the trial of the cause commenced, he examined the plaintiff Mrs. J. W. Smith, and took a measurement of her left arm; that it was three fourths of an inch less in circumference than the right arm—caused, in his opinion, by an injury.

These, in substance, constitute the facts proven by the plaintiffs; and, under the rulings of this Court, we must, in considering the motion for a new trial, reject all of the evidence of the exceptor which is in conflict with that of the plaintiffs, and give full force and effect to the evidence of the plaintiffs. See *Dower* v. *Church*, 21 W. Va. 23. And the same rule must be applied in considering the propriety of the action of the Court upon the motion to exclude the evidence of the plaintiffs. See *Wandling* v. *Straw*, 25 W. Va. 692; *Franklin* v. *Geho*, 30 W. Va. 27, (3 S. E. Rep. 168.)

In determining the question as to whether the court erred in overruling the demurrer filed by the defendant in this case, it is only necessary to call attention to the fact that the demurrer was general, and counsel for the defendant do not insist that there was any defect in the second count. Neither

is there any error apparent on the face of said second count, so far as we are able to discover; and, the second count being good, the demurrer, being general, was properly overruled. *Nutter* v. *Sydenstricker*, 11 W. Va. 536.

The serious question, however, which is presented by this case for our consideration and determination, is whether or not the court erred in refusing to exclude the evidence of the plaintiffs from the jury as being insufficient to maintain their suit, or in overruling the motion of the defendant to set aside the verdict of the jury as being contrary to the law and the evidence, and award it a new trial; and, as these rulings involve so nearly the same questions of law and fact, they may be considered together. What was it that caused the damage and injury to the female plaintiff on the day this accident is alleged to have occurred? Her own testimony shows that she had passed over this road two or three times a week for the preceding two years without injury. She was driving a horse that the evidence shows was gentle, and was driving him on the side of the road furthest from the river bank, and no doubt would have passed on as usual if the horse had not become frightened at the calves coming down from the hillside out of some pawpaw bushes, and commenced backing. That she tried to keep her horse in the road; but he was so badly frightened she could not do so, although he was gentle, easily managed, and never had become frightened before. The witness Dana fixes the width of the road at that point at eighteeen feet, and J. W. Smith at twelve feet. Dividing the difference between these witnesses would make the road fifteen feet. Then the plaintiff, driving at the edge of the road next the hill, was as far from the river bank as she would have been if the road had been thirty feet wide, and she had been driving in the middle of the same; and the horse would have to back the same distance to reach the river bank. In the absence of the calves, then, would the narrowness of the road have injured the plaintiff? This question is answered by the testimony of the witness Dana in detailing his experience for the previous sixteen years in passing over said road 200 times a year, with all kinds of horses and teams, and without an accident, and also by the experience of the plaintiff herself,

in passing over the same road for two years, two or three times a week, with this same horse; she encountered no calves on these many trips, and she met with no accident.

What, then, are we to conclude was the proximate cause of the accident? Was it the narrowness of the road? If such was the case, why had it not occurred many times before? 1 Shear. & R. Neg. § 26, says: "The breach of duty upon which an action is brought must be not only the cause, but the proximate cause, of the damage to the plaintiff. We adhere to this old form of words because, while it may not have originally meant what is now intended, it is not immovably identified with any other meaning, and is the form which has been so long in use that its rejection would make nearly all reported cases on the question involved unintelligible. The proximate cause of an event must be understoood to be that which, in a natural and continuous sequence, unbroken by any new cause, produces that event, and without which that event would not have occurred." And note 3: "If it can not be said that the result would have inevitably occurred by reason of the defendant's negligence, it can not be found that it did so occur, and plaintiff has not made out his case."

Applying this law to the facts of this case, can it be said the condition of the road was the proximate cause of the accident or injury complained of? If the use of this road, which had been for years in the same condition, without any accident resulting therefrom, had continued uninterrupted or unbroken by any new cause, such as the calves rushing from the bushes, would we be sanctioned in saying the injury would have resulted? Or can we say that, without the occurrence of that unlooked-for event, the horse would have backed the vehicle over the river bank? The experience of the plaintiff and others for years answers in the negative. In the case of *Kingsbury* v. *Inhabitants of Dedham*, 13 Allen, 186, it was held that "an object in a highway with which a traveler does not come in contact or collision, and which is not shown to be an actual incumbrance or obstruction in the way of travel, is not to be deemed a defect for the sole reason that it is of a nature to

cause a horse to take fright, in consequence of which he escapes from the control of his driver, and causes damage." In this case the horse was frightened by a small pile of gravel in the road. And in the case of *Cook* v. *City of Charlestown,* reported in a note (page 190) of the same volume, a horse became frightened at another horse which had dropped dead, and was lying at the side of the street; and the frightened horse started and ran, and the carriage struck a tree and the curbstone at a distance of about 180 feet, throwing the plaintiffs out, and injuring them. There was plenty of room for plaintiffs to pass without coming in contact with the dead horse. Under instructions authorizing them to do so, the jury found damages for the plaintiffs, and the defendant excepted; and the case was reversed upon a writ of error.

. In the case of *Titus* v. *Inhabitants of Northbridge,* 97 Mass. 265, the court holds "that when a horse, by reason of fright, disease, or viciousness, becomes actually uncontrollable, so that his driver can not stop him, or direct his course, or exercise or regain control over his movements, and in this condition comes upon a defect in a highway, or upon a place which is defective for want of a railing, by which the injury is occasioned, the town is not liable for the injury unless it appears that it would have occurred if the horse had not been so uncontrollable. Bnt a horse is not to be considered uncontrollable that merely shies or starts, or is momentarily not controlled by his driver."

In the case of *Horton* v. *City of Taunton,* reported in a note to *Titus* v. *Inhabitants of Northbridge, supra,* the facts were somewhat similar to the case under consideration : "A laborer employed by the city had deposited a load of stones within the limits of the highway, and near to, but wholly out of, the traveled portion of it, by the side of a reservoir. * * * The plaintiffs were driving from west to east, and had come within a few feet of these stones when their horse took fright at them, and suddenly began to back, and continued backing until he reached a point beyond the end of the railing west of the brook, and within the thirty one feet where the bank was unprotected by a railing; and there he backed himself and the wagon over the bank, and the injuries were sustained

for which this action was brought. The accident occurred, and all the damage was done, within the limits of the highway. The plaintiffs remained in the wagon, and retained hold of the reins, and used the ordinary means to control the horse and prevent the backing, but without success. Neither the horse nor the wagon came in contact with the stones, * * * nor would the accident have occurred if the horse had not been frightened; and it was agreed that 'the accident would not, probably, have occurred, had the railing extended further westward,' and * * * that the want of a railing at the point where the horse backed over the bank was a defect in the highway, and had existed for many months." There was a judgment for plaintiffs in the court below. CHAPMAN, J., delivering the opinion of the court, said: "This case was considered by the court in connection with *Titus* v. *Inhabitants of Northbridge*, and the two cases must be governed by the same principle;" and, after briefly reviewing the facts, gave judgment for the defendants.

In the case of *Jackson* v. *Town of Bellevieu*, 30 Wis. 251, the court held as follows: "It is not the duty of towns to provide roads which shall be safe for runaway or unmanageable horses, or such as have escaped from control of their drivers without the fault of the town; and where injuries are sustained under such circumstances, it appearing that otherwise they might not have been sustained, the loss must fall upon the owners." See, also, *Fogg* v. *Nahant*, 98 Mass. 578, where a carriage was upset by a horse getting his tail over the lines and becoming unmanageable.

The plaintiff, Mrs. Smith, stated that "she tried to keep her horse in the road, but he was so badly frightened she could not do so." She does not, however, state what she did in trying to keep her horse in the road. Jennie Jones, however, the witness for defendant, who swears that she was driving the calves, does tell what Mrs. Smith did, and her evidence can not be regarded as conflicting with any evidence offered by the plaintiffs, for no other witness tells what Mrs. Smith did. She says: "I was driving two calves, and just as they came up to the horse the horse got scared at the calves, and commenced backing; and Mrs. Smith, who was driving, commenced pulling on the lines, and the horse kept

on backing, and the wagon and all went over the bank."
Mrs. Smith was in a situation that would have a tendency to
excite a lady. The horse was frightened and backing, and
the wagon was near the edge of the bank, which the witnesses
speak of as being dangerous; and she may not have pre-
served that coolness which would enable her to properly
manage a horse, although she was accustomed to driving.
And pulling on the lines, under all the circumstances, would
have a direct tendency to contribute to the result. She, how-
ever, says that she could have managed her horse had it not
been for the narrowness of the read. This is her opinion;
but the horse kept backing till not only the wagon and occu-
pants, but he, went over the bank after them. Upon this
question, as to the width a country road is required to be
maintained and kept in order, it is true our statute requires
that "every road shall be thirty feet wide, unless the County
Court ordered it to be a different width." The order estab-
lishing this road does not appear as a part of the record, and
it does not appear whether it was ordered to be of a different
width or not. Ang. & D. Highw. § 260, says: "It is not re-
quired that towns—at least in the country—should incur the
expense of having the whole width of a highway of two or
four rods, passable safely with wheels on the sides, or even a
double track for wheels over all public roads including cause-
ways and bridges. But if·the town suffers the traveled part
to become widened, or a turnout to exist from the traveled
part to a private way over adjoining land with the character-
istic marks of a highway, it is bound to keep such places,
within the limits of the laying out of the highway, in suitable
repair for travel usually passing;" referring to *Kelsey* v.
*Glover*, 15 Vt. 708; *Green* v. *Danby*, 12 Vt. 338; *Cobb* v.
*Standish*, 14 Me. 198, and others. He says, further: "In
many cases, as has been remarked, all the property of the
town would be insufficient for that purpose. There may be
ledges of rocks, ravines, and water-courses in the road; and
towns are not expected, in all cases, to bridge the whole width
of the road, to fill up ravines, or cut down ledges of rock.
The most that could be required, in a road so difficult by
nature, is that the sides should be in such a state as would
admit of the passing of carriages when they meet without

unusual delay or trouble. 'If a road,' says WOODBURY, J., in the case of *Hull* v. *Richmond,* 2 Woodb. & M. 337, 'was on a steep mountain side, or was carried up from the bed of a stream against a steep cliff of rocks, or through a narrow notch or gorge among the hills, a double track would seldom be expected, though places should be made, at no great distance, for persons to turn out entirely, and others where, by each turning out in part, each could safely pass,' " *etc.*

In the case of *Dickey* v. *Telegraph Co.,* 46 Me. 483, the Court held that "the law does not require the town, in preparing a highway for travel, ordinarily, to make the traveled path the whole width of the road. Towns are not liable for obstructions on the portions of a highway not constituting the traveled path, and not so connected with it as to affect the traveled portion." In this case, it is evident the road was a difficult one to keep in proper order. On the one side was the steep river bank, and on the other the hillside, which slipped and encroached upon the road in wet weather; but, notwithstanding these facts, the evidence is that the road was in passable condition, and was wide enough for two teams to pass. All that the road surveyor, under our statute, is required to do, is that "he shall superintend the county roads and bridges, cause the same to be put in good order and repair, of the proper width, well drained, and to be cleared, and kept clear, of rocks, falling timber, landslides, carcasses of dead animals, and other obstructions, and remove all dead timber standing within thirty feet thereof." Code 1887, c. 43, § 7. The only one of these requirements which it is claimed was not complied with is the one in regard to the width of the road; and the authorities to which we have referred seem clearly to indicate that this requirement is not always to be complied with, but depends upon the character of the country over which the road is laid out; and, for a road located as this one was, with a steep river bank on one side, and a slipping hill-side on the other, we think the evidence shows it was in as good condition as could be expected.

Counsel for the defendant in error quote from 2 Shear. & R. Neg. § 346, as follows: "The general rule is that where two causes combine to produce an injury to a traveler upon

a highway, both of which are in their nature proximate—the one being a culpable defect in the highway, and the other some occurrence for which neither party is responsible—the municipality is liable, provided the injury would not have been sustained but for such defect," and quote numerous decisions to sustain said proposition. We do not controvert this proposition; but, under the evidence adduced in this case, we hold that the proximate cause of the plaintiff's injury was the sudden appearance of the calves from the pawpaw bushes, which frightened the horse, and without which the injury to plaintiff would not have resulted; that the narrowness of the road must be regarded as the remote cause, although the plaintiff says "she could have managed the horse had it not been for the narrowness of the road." There would, however, have been no necessity for managing the horse if the calves had not frightened him. Without that extraneous occurrence, we feel confident the plaintiff would have passed along the road as usual. There was no defect in the road that caused the action of the horse, no hole in the ground left by the supervisor, or pile of stone or lumber placed there by him, that caused the backing, as there was in many of the cases reported. The plaintiff gives it as her opinon that she could have managed the horse but for the narrowness; but can we say, from all the circumstances, the horse would not have backed over the bank if the road had been thirty feet wide. He showed no indication of ceasing to back, but kept on after the wheels went over, and until he went over himself; and I can not say the result would not have been the same if the road had been thirty feet wide. In the case of *Phillips* v. *County Court*, 31 W. Va. 478, (7 S. E. Rep. 427,) this Court held that where the defect or obstruction in the road is merely a remote cause of the injury, and the want of care or negligence of the plaintiff is the direct or proximate cause of the injury, the plaintiff can not recover. In the case of *Fawcett* v. *Railway Co.*, 24 W. Va. 755, this Court held that "the cause of an injury, in contemplation of law, is that which immediately produces it, as its natural consequence; and, therefore, if a party be guilty of a default or act of negligence which would naturally produce an injury to another,

but, before such injury actually results, a third person does some act which is the immediate cause of the injury, such third person is alone responsible for the injury." See, also, the case of *Washington* v. *Railroad Co.*, 17 W. Va. 190. In that case, Judge GREEN, delivering the opinion of the Court, quotes from the case of *Insurance Co.* v. *Tweed*, 7 Wall. 52, from the opinion of Justice MILLER, as follows: "One of the most valuable *criteria* furnished us by these authorities is to ascertain whether any new cause has intervened between the fact accomplished and the alleged cause. If a new force or power has intervened, of itself sufficient to stand as the cause of the misfortune, the other must be considered as too remote."

In my view of the case, neither the instructions asked for by the plaintiff nor defendant were relevant, and they should have been rejected. Disregarding, then, the testimony offered by the defendant, and looking only to the testimony of the plaintiffs for the facts and circumstances of the case, and applying the law thereto, the judgment of the Circuit Court must be reversed, and the case remanded; and a new trial is awarded the appellant.

REVERSED. REMANDED.