## CHARLESTON.

HUNGERMAN v. CITY OF WHEELING.

Submitted June 8, 1899—Decided November 11, 1899,

1. ACCIDENT—*Negligence—Defective Streets.*

   Where a boy seventeen years of age is driving an open buggy along a street, with two companions, younger than himself, behind a horse which has contracted the vicious habit of backing, and which, becoming frightened at escaping steam from a locomotive engine, stops and trembles for a moment, and, on being struck with a whip, commences backing, and in spite of whip and words continues to back the buggy some twenty-five or twenty-six feet on the surface of the street, and then down a steep bank, by reason of which one of the occupants was injured, if sufficient time elapses between the fright of the horse and the accident to permit the driver, a man of ordinary prudence, to make a proper effort to regain control of the frightened animal, even though he should fail, the city would not be liable for its negligence in failing to maintain a rail or barrier along said embankment, as the injury must be attributed to the viciousness of the horse, rather than the defect of the street.    (p. 768).

2. STREETS—*Unmanageable Horses.*

   It is not the duty of towns to provide streets which shall be safe for runaway or unmanageable horses, or such as have escaped from the control of their drivers without the fault of the town.    (p. 768).

Error to Circuit Court, Ohio County.

Action by F. P. Hungerman, by his next friend, George A. Hungerman, against the city of Wheeling. Judgment for plaintiff, and defendant brings error.

*Reversed.*

FRANK W. NESBITT, for plaintiff in error.

HOWARD & HANDLAN, for defendant in error.

ENGLISH, JUDGE.

On the 11th of May, 1898, Francis P. Hungerman, an infant, who sued by his next friend, George A. Hungerman, brought an action of trespass on the case against the city of Wheeling, claiming damages to the amount of five thou-

sand dollars. The declaration was demurred to by defendant, the demurrer overruled, and a plea of not guilty was interposed, and issue joined thereon. The case was submitted to a jury, and resulted in a verdict for the plaintiff of one thousand dollars. The defendant moved the court to set aside the verdict and grant a new trial, and also moved an arrest of judgment. These motions were overruled, the defendant excepted, and thereupon judgment was rendered upon said verdict, and the defendant applied for and obtained this writ of error.

The facts upon which this suit was predicated are as follows: Near the intersection of Wood and Twenty-eighth streets in the city of Wheeling are two bridges, and between them a depression in the ground. In order that Twenty-eighth street might be brought to a uniform grade, a fill has been made between the bridges, the top of which fill at its narrowest point seems to have been 34 feet wide; the surface of the street over this fill being covered with cinder, and a cinder walk for foot passengers ran along each side. At the time the injury complained of occurred, the plaintiff, accompanied by two other boys, about 15 and 17 years of age, respectively, was riding in an open buggy, behind a horse which the testimony shows was in the habit of balking and backing. The horse was driven by the seventeen year old boy, and they had just turned into Twenty-eighth street from Wood street, and gone a short distance along the fill mentioned, when, as the driver testifies, the horse became frightened at the exhaust of an engine, stopped, and, being struck with the whip, began to back, and became uncontrollable. After backing fifteen feet, the buggy and horse went over the embankment. This witness says I let the horse do as it pleased. I couldn't do anything more, so I tried to talk to the horse, and that didn't do any good. We went over." When asked if the horse had got uncontrollable, he answered, "To my sense, it was." The distance this horse backed is stated differently by different persons. As we have seen, Gould puts the distance at fifteen feet; Morrison says twenty to twenty-five feet; Bridigan says forty feet. If we average these estimates, it will make twenty-six feet. In stating that the horse became uncontrollable Gould is confirmed by Morrison, and this witness saw the accident, and tells how it occurred. He says: "I

heard the boy holler 'Whoa!' I looked up, and I seen the horse started to back as though he had been frightened by something, and I seen them still keep on backing. Finally the wagon turned,—the horse kind of pulled haw, and turned the wagon, and started for the bank, or on a line with the bank, and I hollered, 'Jump, jump, boys!'" Now these are the circumstances that immediately surrounded the plaintiff at the time he received the injury complained of.

During the progress of the trial, the defendant, by its counsel, moved the court to give to the jury fourteen instructions. Nos. 1, 2, 3, 4, and 5 were given, and the remaining nine rejected. The defendant excepted to the action of the court in refusing the same. The instructions thus refused read as follows, "(6) You are instructed by the court that if you find that Twenty-eighth street at the point where the accident occurred, was defective and dangerous for want of a barrier or rail, and that the horse mentioned in evidence became frightened at a locomotive, and stopped and shivered and backed, and that sufficient time elapsed between the fright of the horse and the accident to permit the driver, being a man of ordinary prudence, to make a proper effort to gain control of the frightened animal, even though he should fail, the injury must be attributed to the viciousness of the horse, rather than to the failure of the city to maintain barriers, and you must find for the defendant city. (7) In order to justify a verdict against the defendant city, it is necessary that it appear from the evidence not only that ,by reason of the absence of barriers or guard rails, Twenty-eighth street, at the point where the accident occurred, was unsafe, but also that it was defective, and out of repair; and, unless this fact is made to appear from the evidence, your verdict must be for the defendant city. (8) The court instructs the jury that under the law of this State, which is binding upon the jury in this case, that when a horse, by reason of fright, disease, balkingness, or viciousness, becomes actually uncontrollable, so that his driver cannot stop him, or direct his course, or exercise or regain control over his movements, and in this condition comes upon a defect in a highway, or upon a place which is defective for want of a railing, by which the injury is occasioned, the town or city is not liable for the injury, unless it appears that it would have occurred if the

horse had not been so uncontrollable. Therefore, in this case, even if you find that Twenty-eighth street was, at the time of the accident, defective and dangerous for want of a barrier or railing, and that the accident complained of would not have occurred had it not been for the absence of barrier or rail, yet if you further find that the horse behind which the plaintiff was riding became either frightened or balky, and thus became actually uncontrollable, so that his driver could not stop him, or direct his course, or exercise or regain control over his movements, and in this condition came upon the place where the street was defective for want of a railing or barrier, the city cannot be held liable for the ensuing accident, unless you further find that the accident would have occurred if the horse had not been so uncontrollable. (9) Under the law of this State it is not the duty of the city of Wheeling to provide roads or streets which shall be safe for balking or unmanageable horses, or such as have escaped from the control of their drivers, without the fault of the city. Therefore if you find that the accident complained of in this case occurred under such circumstances, it appearing that otherwise it might not have occurred, you must find for the defendant city. (10) Unless you find from the evidence that the accident complained of in this case would have inevitably occurred by reason of the condition of the highway and the absence of barriers or rails, you must find for the defendant city. (11) Even if you should find that Twenty-eighth street was defective and dangerous for want of a barrier or rail, and that the horse referred to in evidence became frightened at a locomotive or train of cars, and while so frightened backed over the embankment at the side of Twenty-eighth street, and that the accident would not have occurred if a barrier had been placed at the side of the street, yet, unless you further find that the accident would have occurred if the locomotive had not so frightened the horse, you must find for the defendant city. (12) Even if you should find that the highway at the point where the accident occurred was defective and dangerous for want of a barrier or guard rail, yet if you further find that the horse mentioned in the evidence was what is known as a balker, and that on the occasion of the accident he balked, and got actually beyond the control of his driver, and thus backed the buggy over the embankment at

the side of the road, your verdict must be for the defendant city, unless you further find that the accident would have occurred if the horse had not so balked and so become uncontrollable. (13) Under the law of this State, which is binding upon the jury in this case, the defendant city is not required to make the traveled part of the street the whole width as laid out, and the defendant is not liable for defects on the part not usually traveled upon which do not affect the safety of the traveled part. Therefore, no matter what defect may be shown to have existed on Twenty-eighth street at any point outside of the part usually traveled upon by vehicles, you cannot, upon that account, find against the defendant city, unless it appears that such defect affected the safety of the traveled part of the street. (14) If you find that Jay Gould, the driver of the horse mentioned in evidence, was not a man of ordinary prudence, or as prudent as such a man 'would' be, at the time the accident occurred, and that, if a man of ordinary prudence had been driving the horse, and using ordinary care, the accident would probably not have occurred, the accident must be attributed to the lack of prudence on the part of Jay Gould, and you must find for the defendant city."

The court also, at the instance of the plaintiff, gave to the jury three instructions, and to the second and third thus given the defendant objected, and claimed that the court erred in giving instructions Nos. 2 and 3 asked for by plaintiff, which read as follows: (2) The court instructs the jury that, where a rail or barrier is necessary for the proper security of travelers at places along a public street which, from their nature, would be otherwise unsafe, and the maintenance of such rail or barrier would have prevented the happening of an injury, it is negligence not to construct and properly maintain such a barrier. Therefore, in this case, taking into consideration the nature and construction of Twenty-eighth street at the scene of the accident, the declivity extending down from the north side of said street to the Terminal Railroad tracks beneath, the several lines of railroad beneath said street, and the railroad extending along Wood street and over Twenty-eighth street at the intersection of said streets, and the two bridges located on Twenty-Eighth street, if you believe that a rail

or barrier was necessary to make Twenty-Eighth street at said point reasonably safe for travelers, and that without such rail or barrier said street at said point would be unsafe and dangerous, then an injury sustained by Francis P. Hungerman, proximately caused by the absence of such rail or barrier, is due to the negligence of the city of Wheeling, and the said city is liable in damages therefor. (3) The jury are instructed that, if their verdict be for the plaintiff, they are, in estimating his damages, at liberty to consider the health and condition of the plaintiff before the injury complained of as compared with his present condition in consequence of said injury, and whether said injury is in its nature permanent, and the consequent loss resulting therefrom, and how far said injury is calculated to disable the plaintiff from engaging in mental pursuits or employments in the future, for which, in the absence of said injury, he would have been qualified, and also the physical suffering to which he was subjected or may be subjected by reason of said injury, and to allow such damages as, in the opinion of the jury, will be a fair and just compensation for the injury which the plaintiff has sustained; but your verdict must not exceed the sum of $5,000."

Now, without taking up these instructions *seriatim* and analyzing them, my conclusion, from the whole case presented by the record, is that the error into which the learned judge was led in ruling upon these instructions arose mainly from a misapprehension of the proximate cause of the plaintiff's injury. The evidence clearly shows that the street was thirty-five feet wide at the point where the accident occurred, and that this same driver had repeatedly driven along the same without accident, when there was no railing along the embankment, and evidently would have done so on this occasion but for the fact that the railway engine exhausted its steam, causing the horse to back and become unmanageable. But for the noise made by the escaping steam, no accident would have occurred; and this noise, causing the fright of the horse, taken with the horse's natural disposition to balk and back, was the proximate cause of the accident, and not the want of a guard rail. It is true, a rail might have prevented the accident, but no guard rail would have been necessary if the

horse had not become uncontrollable. Counsel for the defendant in error rely on the principles announced by this Court in *Rohrbough* v. *County Court*, 39 W. Va. 474 (20 S. E. 565,) but, in my view, the case at bar is easily distinguished from that case. In the Rohrbough Case the accident appears, as stated by the Court, to have been an instantaneous occurrence, there being not sufficient time between the fright of the horse and the accident to enable the plaintiff, a man of ordinary prudence, to regain control of his horse. Before the plaintiff could arise to his feet, or do anything to control it, the horse backed over the unprotected wall of the approach to the bridge. In that case this Court quoted with approval the case of *Titis* v. *Inhabitants of Northbridge*, 97 Mass. 266, as follows: "When a horse, by reason of fright, disease, or viciousness, becomes actually uncontrollable, so that his driver cannot stop him, or direct his course, or exercise or regain control over his movements, and in this condition comes on a defect in the highway, or upon a place which is defective for want of a railing, by which an injury is occasioned, the town is not liable unless it appear that it would have occurred if the horse had not been so uncontrollable. But a horse is not to be considered uncontrollable that merely shies or starts, or is momentarily not controlled by the driver." In the case under consideration, the horse stops, trembles; the boy applies the whip; he commences backing, and continues for twenty-five feet, and the driver himself says the horse became uncontrollable. In the Rohrbough Case this Court, in its opinion, uses the following language: "From these authorities the proposition is deduced that, if sufficient time elapses between the fright of the horse and the accident to permit the driver, being a man of ordinary prudence, to make a proper effort to regain control of the frightened animal, even though he should fail, the county would not be liable for its negligence, as the injury must be attributed to the viciousness of the horse, rather than the defect of the highway. But if no such time intervenes, and the fright and accident are concurrent events, then the county would be liable." In that case it did not appear that any time intervened between the fright of the horse and the accident; the whole matter was an instantaneous occurrence. How different

in this case. Here the horse became uncontrollable, and backed the buggy twenty-five feet to the edge of the embankment and over it. There was no lack of time for a prudent man to regain control of the animal. But for his vicious conduct, which the evidence shows was habitual, and which we must conclude was the proximate cause of the accident, it would not have occurred. In *Horton* v. *City of Taunton*, reported in a note to *Titus* v. *Inhabitants of Northbridge*, *supra*, which case was cited with approval by this Court in *Smith* v. *County Court*, 33 W. Va. 713, (11 S. E. 1,) the facts were similar to those in the case at bar. A laborer employed by the city had deposited a load of stone within the limits of the highway, and near to, but wholly out of, the traveled portion of it, by the side of a reservoir. The plaintiffs were driving from west to east, and had come within a few feet of these stones, when their horse took fright at them, and suddenly began to back and continued to back until he reached a point beyond the end of the railing west of the brook, and within the 31 feet where the bank was unprotected; and there he backed himself and the wagon over the bank, and the injuries were sustained for which the action was brought. There was a judgment for the plaintiffs in the court below, which was reversed by the Appellate Court. In my view of the case, these authorities correctly propound the law which should govern it, and lead me to the conclusion that the circuit court erred in giving instructions Nos. 1 and 2 asked for by the plaintiff, so far as it therein told the jury that the failure to keep Twenty-Eighth street in a reasonably safe condition, or to maintain a rail or barrier along said street, was the proximate cause of the plaintiff's injury. This view is also sustained by the case of *Jackson* v. *Town of Belleview*. 30 Wis. 251, where it was held that: "It is not the duty of towns to provide roads which shall be safe for runaway or unmanageable horses, or such as have escaped from control of their drivers without the fault of the town; and where injuries are sustained under such circumstances, it appearing that otherwise they might not have been sustained, the loss must fall upon the owners." See, also, *Fogg* v. *Inhabitants of Nahant*, 98 Mass. 578. The instructions asked for by the defendant and rejected by

the court, in my opinion, were proper, and the court erred in rejecting same. It is so apparent that the accident and consequent injury to plaintiff in this case was caused by the vicious habit of the horse in balking and backing, of which the driver was not only well aware, but also aware of the condition of this street, over which he had so frequently driven, as well as the proximity of the railroad tracks thereto, that we must consider the conduct of the horse on this occasion, as shown by the evidence, the proximate cause of the plaintiff's injury, and conclude that the court erred in overruling the defendant's motion to set aside the verdict and award a new trial. The judgment complained of is therefore reversed, and a new trial awarded.

*Reversed.*