# CHARLESTON.

CITY OF McMECHEN *et al.* *v.* WHEELING TRACTION CO.

Submitted January 11, 1922.    Decided January 17, 1922.

1.  HIGHWAYS—*Where Part of Highway is Used as a Street, the City, and Not the County, is Required to Keep it in Safe Condition for Travel.*

    When the legislature creates a municipal corporation and grants it power to open, grade and maintain public streets within its corporate limits, such parts of a public highway as may be within such corporate limits as are adopted by said municipal corporation as one of the streets thereof, becomes a public street of such city, and the primary obligation to maintain the same in a reasonably safe condition for travel thereover is upon the municipal corporation, and not upon the county court of the county wherein such municipal corporation is situate.    (p. 29).

2.  SAME—*Adoption of Street as Highway by County or State Held Not to Relieve City from Keeping it Reasonably Safe.*

    Where, under the provision of the road law, the county or state authorities adopt a city street, or any part thereof, as

a part of one of the highways of the state or county, the city wherein such street is is not relieved of the duty and obligation to maintain the same in a reasonably safe condition. The effect of the adoption of such a street by the state or county authorities as a part of a main state or county road is simply to enable the state or county authorities to spend the state or county funds thereon to make it reasonably correspond in its condition with the highway or highways with which it connects at the corporate limits of such city. (p. 30).

3. Street Railroads—*Franchise Obligation to Strengthen Bridges Limited to Burden of Railroad.*

A condition in a franchise authorizing a street railway company to lay its tracks over the public roads of the county which requires it, in case it uses any of the county bridges, to strengthen the same, properly construed, only requires such street railway company to so strengthen such bridges as to relieve the county court, or its successor, of the burden cast thereon by the construction and operation of the street railway thereover. (p. 31).

4. Same—*Joint Obligations to Municipalities to Strengthen Bridge Not Released by One.*

Where the common corporate line of two contiguous municipal corporations divides a highway bridge, and places part thereof in each of such municipal corporations, the duty to support and maintain said bridge is joint as to such municipal corporations, and the same must be maintained in a reasonably safe condition as a whole; and where a street car company operates its cars over such a bridge under a contract requiring it to strengthen the same, by the terms of which contract it is also under other obligations in regard to the streets over which it runs, a release by one of the municipal corporations of the obligation of such street car company to it will not be construed as releasing it from its joint obligation to the two municipalities to strengthen the bridge so used. (p. 33).

5. Same—*City Extending Limits to Include Bridge May Enforce Railroad's Contract Obligation for Maintenance.*

A valid contract made by a county court with a public service corporation, in relation to the maintenance of a highway bridge which is used by such public service corporation in connection with its use by the general public, inures to the benefit of a city whose territorial limits have been extended so as to include such bridge, and may be enforced by such city by any means which would have been available to such

county court for its enforcement had it not been included in the corporate limits of such city.  (p. 33).

Certified Question from Circuit Court, Marshall County.

Application by the City of McMechen and others for a writ of mandamus against the Wheeling Traction Company, in which the respondent's return to the alternative writ of mandamus was found insufficient, and questions certified.

*Reversed; Demurrer to return overruled.*

*J. C. Simpson* and *Martin Brown*, for plaintiff.
*Erskine, Palmer & Curl*, for defendant.

RITZ, JUDGE:

The question involved on this certificate is the propriety of the ruling of the circuit court holding the return of the respondent to an alternative writ of mandamus to be insufficient.

In the year 1893 the county court of Marshall county granted to the predecessor of the respondent a franchise authorizing the construction and operation of a street railway over the public road leading from Benwood in said county of Marshall to Moundsville, the county seat thereof, which contained, among other conditions and stipulations, the following: "Whenever the said railway company shall use for its road purposes any of the county bridges the said company shall strengthen the county bridges at the expense of said company." Pursuant to such authority the respondent's predecessor constructed its street railway over the county road between Benwood and Moundsville. Between these two cities said county road crosses a stream called McMechen's Run upon an iron bridge which had theretofore been constructed by the county court, and the street car company, under the authority of the franchise, laid its tracks across this bridge. At that time nothing was done by the street car company in the way of strengthening the bridge, it being the contention that it was entirely sufficient to support the railway traffic, as well as the ordinary traffic thereover. In the year 1895 the corporate limits of

the city of Benwood were extended south to the center of McMechen Run, thus including within the said city of Benwood one-half of this county bridge. About the same time the city of McMechen was created by an act of the legislatrue, its northern corporate line coinciding with the southern corporate line of the city of Benwood, so that from this time on the southern half of this bridge was in the corporate limits of the city of McMechen, and the northern half thereof in the corporate limits of the city of Benwood. The street railway was operated over this bridge from the time it was put in operation in 1893 until the year 1915 without anything being done in the way of strengthening the bridge, either by the street railway company or the relators, the cities of McMechen and Benwood. In the year 1915 the street railway company placed under its tracks, where the same cross this bridge, parallel steel girders, and supported these girders with steel posts, in this way relieving the bridge from the strain placed thereon by the operation thereover of the respondent's railway. The relators, the cities of McMechen and Benwood, contend that it was the duty of the street railway company to strengthen the entire bridge. The alternative writ of mandamus avers that by reason of the operation of the respondent's cars over the bridge before any effort was made to strengthen the same it had become weakened and insufficient for travel thereover in the ordinary way, and that the respondent was obliged, because of the provisions of the franchise above quoted, to make the bridge sufficient for the purpose for which it was intended. Demand was made upon it that it strengthen the bridge with that end in view, and the respondent refusing to comply with this demand this writ of mandamus was brought to compel it to perform its obligations as contended for by relators. A demurrer to the alternative writ of mandamus was overruled, and the respondent filed a return thereto.

In this return the right of the relators to have a writ of mandamus is denied upon the ground that there is no privity of contract between the relaotrs and the respondent, or its predecessor, the contract being made with respondent's predecessor and the county court of Marshall county pro-

viding for the use of the county roads of that county by respondent's predecessor; that this road is the main road between the city of Moundsville, the county seat of Marshall county, and the city of Wheeling, the county seat of Ohio county; and that the county court of Marshall county was not relieved of its duty and obligation to maintain this road because parts thereof, including this bridge, were afterwards included within the corporate limits of the relators, and particularly is this true in view of the fact that the said road from Moundsville to Wheeling has been designated as one of the main or class A roads by the county court of said county of Marshall; upon the further ground that the obligation of the contract only required the respondent or its predecessor, to strengthen the bridge so far as it might be necessary to strengthen the same because of the use thereof by respondent; that until the year 1915 the bridge was entirely adequate for all of the uses made of it, and that the same has not become weakened or unfit for use by reason of any strain to which it was subjected by the respondent; that in the year 1915 the respondent increased the size and weight of its equipment, for which reason it became necessary for it to strengthen this bridge; that it thereupon placed the steel girders above referred to under its tracks and entirely relieved the bridge of the weight of the tracks and the cars operated thereover; that if the bridge is unfit or insufficient for the ordinary traffic thereover at this time, it is not because of any strain placed thereon, either at this time, or at any previous time, by the respondent, but because of the use thereover of very heavily laden trucks by others using the highway, and that respondent is not required to keep the bridge strengthened so as to make it sufficient for this use; that the relator, the city of McMechen, cannot in any event have any relief, for the reason that it, for a valuable consideration, released the respondent from its obligation under the franchise above referred to; and further, that any relief is barred to either of the relators by the Statute of Limitations which is pleaded and relied upon. The court held that this return made

no defense to the alternative writ, and it is the propriety of that ruling that is involved here.

The respondent insists that the bridge in question is a part of one of the county roads of Marshall county, and that the relators are under no obligation to keep the same in good order or repair. It insists that the constitutional provision by which county courts are authorized and empowered to regulate and control county roads under such regulations as may be prescribed by law inhibits the relators from assuming any control or jurisdiction over this bridge inconsistent with the duty and authority of the county court to maintain the same in a condition making it reasonably safe for travel in the ordinary mode. In the case of *Cavender* v. *The City of Charleston*, 62 W. Va. 654, it was distinctly held that the legislature had authority to enlarge the limits of a municipal corporation, and transfer to a city the duty of maintenance and repair of a public bridge within the limits of the city as so enlarged. In that case the corporate limits of the city of Charleston were extended so as to include a bridge which had been constructed by the county of Kanawha as a part of one of the public highways. The suit was to recover damages for an injury sustained by reason of the bridge being unsafe for travel in the ordinary way, and the liability of the city therefor was sustained. It is insisted by the respondent that the provision of the constitution in regard to the control of county roads by the county court, being § 24 of art. 8, is not referred to or passed upon in that decision. The decision in the Cavender case is a well-considered one, and it is rather violent to assume that the court did not consider a provision of the fundamental law so far as the same might be applicable to the case presented for its determination. It is true that § 24 of art. 8 provides that county courts shall have the power to establish and regulate roads, ways and bridges, but this is all under such regulations as may be provided by law. It simply means that the county courts in this regard are subject to such legislative enactments as do not contravene any provision of the constitution. Now, as was held in the Cavender case, whenever a public road is taken within the limits of

an incorporated city, town or village, upon which is conferred the right to control its streets and alleys, such public road ceases to be a county road and becomes one of the streets of such incorporated city, town or village, and such city, town or village has imposed upon it the duty and obligation of maintaining such street in a reasonably safe condition for the uses for which it is intended. As to the maintenance of such roads, and as to the responsibility therefor, the primary duty is cast upon the municipal corporation, and it may be said that by the act of the legislature creating a municipal corporation it has withdrawn for this purpose that part of the territory from the jurisdiction of the county court.

Nor do we think there is more merit in the contention that by designating the highway between Moundsville and Wheeling as a class A. road under authority of a legislative act, the county court thereby assumed full control and authority thereover. It is quite true that the road law as it now exists authorizes state and county outhorities to establish through cities and towns certain roads as main county or state roads. This provision is not, however, one withdrawing from the municipality its police jurisdiction from these highways, or in any way relieving it of the obligation cast upon it to control and maintain them. It simply authorizes county or state authorities, when they have designated such roads to be county or state highways, to spend money on them to keep them in such condition as the state or county authorities may believe to be desirable. It was realized that in many cases the city or town authorities did not maintain their roads and streets in that condition which was deemed desirable, and the legislative act authorizing county and state authorities to designate some of the streets of a city or town as part of a state or county road had no other effect than to enable such state or county authorities to spend the state or county funds in maintaining them in such more improved condition. The city authorities are in no way relieved from their primary obligation to maintain such roads and streets in a reasonably safe condition for travel thereover, and the liability of such city,

should an injury occur because of the failure to keep such roads and streets in such reasonable state of repair, is no different than it would have been had the acts enabling the state and county authorities to spend the money on such roads and streets never been passed. This is the doctrine of White against the County Court, 76 W. Va. 727, cited and relied upon by the respondent. It is not intimated in that case that the city of Princeton, in which the street there involved lay, so far as it had established the same as a public street, did not have the same responsibility in connection therewith, after the county court had spent the money thereon, as it had in connection therewith before that time.

The next defense insisted upon by the respondent involves the proper construction of the provision of the franchise relied upon. This provision we have above quoted. The relators insist that under this provision the respondent is obliged to strengthen this bridge whenever the same becomes insufficient to sustain the travel thereover, whether such insufficiency is because of the use made thereof by the respondent, or for any other reason, and evidently this was the view taken by the court below, while the respondent contends that this language required it only to see that no additional burden was imposed upon the county court because of its use of the bridge. It insists that the language creates no obligation upon it to strengthen this bridge when the necessity for such strengthening arises from the increased weight of traffic thereover for which it is in no sense responsible. It occurs to us that this is the reasonable interpretation of this provision. This bridge was in existence in the year 1893 when the franchise was granted to the predecessor in title of the respondent. At that time it was sufficient for the purpose for which it was constructed, and not only for that purpose, but for many years it supported the tracks and equipment of the respondent without any strengthening thereof. The allegation of the return is that in the year 1915 the respondent deemed it necessary to strengthen the bridge and relieve it entirely of any strain because of the operation of its railroad thereover, and that no weakening of the bridge had happened up to that time

by reason of its use by the respondent, and that if the bridge has since become weakened and insufficient it is because of the use thereof by heavy motor trucks and other travel thereover. If this should turn out to be the fact, then we do not think there is any duty upon the respondent to strengthen the bridge to meet these requirements. It would be giving to the language used a rather extended meaning to say that the respondent is under the obligation to keep this bridge strong enough to sustain any traffic that it may be desired to conduct thereover at any time in the future. Because of the increase of population and commercial activity the traffic at this point may become so dense that in order for its proper handling this bridge would be required to sustain many hundreds of heavy trucks at the same time, and can it be said that the respondent assumed the obligation to make it strong enough for this purpose? At the time the contract was made the bridge was in a rural community. Since that time it has become a link in two prosperous and thriving cities, and no doubt the traffic thereover, not only because of the increase in commercial activity in the vicinity, but because of the increase in the weight of the vehicles using the same, imposes a strain upon the structure many times greater than that which existed at the time the contract was entered into. It was not the intention of the respondent, or its predecessor, to assume the obligation to take care of this increased burden, but only to see that the other contracting party was not obliged to increase the strength of the bridge because of its use by the respondent. The alternative writ charges that the respondent operated its cars over this bridge when the same was insufficient in strength for the purpose, and thereby so weakened it that it is now unsafe for the ordinary travel thereover. This allegation is denied by the respondent, and it asserts that not only had its use of the bridge not weakened it before it had strengthened the same under its tracks, but it is now relieved of any strain from its use thereof. The rights of the parties depend upon the answer to the issue of fact thus made. We think this part of the return pre-

sents a good defense to the writ, and the court below should
have so held.

The return further makes defense to the writ upon the
ground that the city of McMechen, by its common council,
for a valuable consideration, released the respondent from
all of its obligation to said city arising under the terms of
the franchise above referred to. It is said that this allegation
of the return makes no defense to the writ because it does
not appear that the parties who executed a receipt which is
filed with the return were authorized to release the respond-
ent. We do not think there is anything in this contention.
The return avers that for a valuable consideration the coun-
cil of the city and a committee duly authorized thereto
made the contract of release, and a receipt is filed showing
payment of part of the consideration therefor. If it should
turn out that this action was not taken by the proper authori-
ties, of course the release would be of no effect, but the re-
turn alleges that the proper authorities did make it, and
this fact, if challenged, must be proved the same as any
other fact relied upon.

There is another reason, however, not urged by counsel,
which to our minds would make inapplicable to the bridge
in question any release made by one of the relators. It
will be borne in mind that this bridge connects the cities
of McMechen and Benwood, one-half thereof being in each
of said cities. Could a release by one of these cities of the
obligation of the respondent under the franchise to it, be-
said to apply to its obligation to strengthen this bridge?

We think not, for this reason: neither of said cities can be
considered as the owner of any particular part of said
bridge. The bridge is a whole, it is a unit. The obligation
of the respondent to strengthen it is to strengthen all of it
if it should need such strengthening. The obligation of the
cities of McMechen and Benwood is to maintain this bridge
in a reasonably safe condition all the way across. This
obligation cannot be divided. If the city of McMechen
maintained the bridge in good order out to the middle of
the stream, and it was allowed to become dangerous for
the other half of the way, it could not be said that any part

of the bridges was in a safe condition for travel in the ordinary way. The suit proceeds in the names of both of the cities upon the theory that their obligation to maintain the bridge is joint, and we think this is correct. The obligation, therefore, of the street railway company, under the conditions that now exist, is not to either of said cities, but it is a joint obligation to both of them to strengthen this bridge, in its entirety, and a release to one of them of its obligation to that one, under the franchise contract, would not release it from its joint obligation to both of them in regard to this bridge, nor could it be considered for a moment that the parties had such a joint obligation in mind when the release set up and relied upon was executed. We do not think, therefore, that this attempted defense is of any avail to the respondent.

The respondent also insists that the relators are not entitled to the relief asked for the reason that the contract, which is the basis of relators' suit, was between respondent and the county court of Marshall county, and that relators, not being parties thereto, cannot have the benefits or advantages arising therefrom. There is no merit in this contention. The contract was made for the benefit of the governmental agency charged with the duty of maintaining the roads and bridges, and when, by an act of the legislature, this agency was changed and the duty cast upon the relators, they became the successors of the county court so far as the maintenance of this bridge is concerned, and entitled to the advantage of all contracts made by their predecessor in relation thereto. In making the contract referred to the county court was performing a governmental function, and when another agency was subsequently charged with the duty which theretofore devolved upon the county court, such substituted agency simply stepped into the position theretofore occupied by the county court and became entitled to all lawful means theretofore used by its predecessor in the performance of the governmental function charged upon it. 28 C. Y. C. 220.

Nor is the defense of the Statute of Limitations as the same is set up and relied upon any real defense. Accord-

ing to the construction of the contract which we have adopted, the obligation of the respondent to strengthen the bridge only arose when there was necessity therefor, and consequently no right of action would accrue against it until that time. The language of the return relying upon the Statute of Limitations simply is that because the respondent has used the bridge since 1893 without being sued, the Statute of Limitations now relieves it of further liability. The facts stated may be entirely true, but still the Statute of Limitations have no application. There is no allegation that the cause of action arose more than ten years before suit brought, nor do the facts alleged amount to this, so that we are not called upon to say whether the Statute of Limitations would or would not be a defense. It may be that the duty to strengthen the bridge, if it ever arose, is a continuing one, and binds the respondent at all times, regardless of when it first violated it.

It follows from what we have said that the return tendered by the respondent makes a good defense to the alternative writ, and the action of the court in holding that it made no defense thereto was error. We will reverse that action, permit the return to be filed, and certify this result to the circuit court of Marshall county for such further proceedings in the cause as may be appropriate.

*Reversed; Demurrer to return overruled.*