## CHARLESTON.

HOWARD R. WEAVER *v.* WHEELING TRACTION CO.

Submitted September 12, 1922.    Decided September 26, 1922.

1. TRIAL—*Rejection of Photographs to Show Condition of Street Two Years Before Photographs Taken Not Erroneous.*

   In an action for personal injuries caused by a defect in a street, on cross-examination of plaintiff's witness, defendant offered in evidence certain photographs taken two years after the injury, which were permitted to go to the jury to show the topography of the street at the point of the defect. Later, defendant, on the examination in chief of its witness, offered the photographs to show that the street at that point was in the same condition at the time of the injury as it was at the time the photographs were taken, which offer for that purpose was rejected, though it was shown by defendant that some changes had been made there since the injury, and defendant's witnesses were freely examined as to the condition of the street as of the times of the injury and the taking of the photographs. The photographs were in for all practical purposes, and the action of the court was not error. (p. 532).

2. SAME—*Evidence That Only Slight Changes Had Been Made in Street at Defect Point Since Personal Injury May Be Rebutted by Showing Changes.*

   In such an action, where defendant introduces evidence tending to show that no changes, or only slight changes, have been made in the street at the point of the alleged defect since the date of the injury, the plaintiff has the right to repel such evidence to show what changes have been made. (p. 532).

3. RAILROADS—*Company Bound to Repair Street Taken Over Under Road Law.*

   Where a street railway company under a franchise from a city is obliged to keep in repair that portion of the street

occupied by its tracks, and afterward such street is adopted by the county court of the county as part of a class "A" road, under the Good Roads Law of 1917, such action does not relieve the railway company of its duty under its franchise to keep its portion of the street in repair. (p. 533).

4. APPEAL AND ERROR—TRIAL—*Allowing Plaintiff to Give Further Evidence After Defendant's Evidence Closed is Discretionary.*

Generally, whether plaintiff shall be allowed to give further evidence after defendant's evidence is closed is within the discretion of the trial court, and its exercise will rarely be ground for reversal. (533.)

5. DAMAGES—*Evidence Held Sufficient to Carry Question of Deceased's Earning Capacity by Personal Injuries to Jury.*

Where, in an action for personal injuries to a boy eight years of age, the evidence shows that the left side of his skull was fractured between the frontal and parietal bones, requiring the removal of several pieces of bone as large as a man's thumb nail; that this wound can never be repaired; that it affected his ability to resist heat and cold; that he had some scalp wounds and wounds on his face, a cut extending through the eye-brow and upper eye-lid; that he is not as strong as he would have been had he not been injured, and the wounds were exhibited to the jury; there is sufficient evidence to go to the jury touching the question whether his earning power had been decreased by reason of the injury. (p. 533).

6. SAME—*$5,000 for Permanent Injuries to Head of Boy 8 Years Old Held Not Excessive.*

Under such circumstances a verdict for $5,000 will not be set aside because excessive. (p. 533).

7. MUNICIPAL CORPORATIONS—*Defect in Street Held Proximate Cause of Injury in Runaway.*

Where a gentle and reliable team hitched to a wagon, on a public street, takes sudden fright, and before its driver can make proper effort to regain control thereof, swiftly runs into a defect in the street about thirty feet away, an injury received thereby by a passenger in the wagon is actionable and the defect in the street is the proximate cause of the injury. (p. 535).

Error to Circuit Court, Marshall County.

Action by Howard R. Weaver against the Wheeling Traction Company. From judgment for plaintiff, defendant brings error.

*Affirmed.*

*Erskine, Palmer & Curl,* and *James D. Parriott,* for plaintiff in error.

*J. Howard Holt* and *Martin Brown,* for defendant in error.

MEREDITH, JUDGE:

The defendant seeks to reverse a judgment for $5,000 rendered by the circuit court of Marshall County for personal injuries received by plaintiff, a boy about eight years of age.

The injury occurred near the intersection of Sixteenth and Marshall Streets in the City of Benwood. Marshall Street is but twenty feet wide. It extends north and south, and is intersected by Sixteenth Street running east and west. Defendant operates a street car line from the City of Wheeling, running through the cities of Benwood and McMechen to Moundsville. This line is located on the west side of Marshall street as it runs through Benwood, and occupies approximately eight feet of the street, which was paved the entire width. On the day of the injury, the boy's father, Roscoe C. Weaver, a farmer, was operating a market wagon. He drove his team south of Sixteenth street, stopped it on the east side of Marshall street headed south, got out and crossed the street to make a sale of strawberries, leaving his boy and the boy's grandfather in charge of the team. He came back, took charge of the team, and turned his wagon to the right to go north. In doing so, on account of the narrow street, he was compelled to drive over on the part of the street between the rails of the defendant. One of the wheels on the left side of the wagon got on the west side of the east rail. There is some evidence that the bricks between the rails were loosely laid where he turned. After turning north, Mr. Weaver tried to turn his team further to the right, so as to get the wheel of the wagon on the east side of the east rail, but the wheel caught and slid along the rail, the grating noise or the whipping of the wagon tongue, or both, scaring his team, and it started to run away. It ran

about ten yards, when the wagon ran into a hole in the street, upset, throwing the boy out and seriously injuring him; the father suffered a broken leg, though that injury is not involved in this action; the wagon tongue was broken, and the horses ran on for about one hundred yards, before stopping. The defendant had for some time been repairing the street where the wagon upset and northward therefrom, taking up the brick, removing the dirt between the ties, and putting in sound ties where the old ones had decayed. At the intersection of Marshall street with Sixteenth street there is a sewer crossing Marshall street, and over this sewer, as it crosses under the street car line, is a "grating" to let the surface water accumulating between the rails flow into the sewer. Just north of the grating the defendant had removed the brick between its rails for a space of ten or fifteen feet, taken out the dirt between the ties and replaced the ties that had decayed. It had not repaved this space, but it claims it had refilled the spaces between the ties with crushed stone or slag, and had filled over the ties almost level with the top of the flange street car rails. On the other hand, it is shown by plaintiff that the brick had been taken up, and the dirt removed from between the ties, leaving the ties exposed, and a hole some eight or nine inches deep, about the width of the track and ten or fifteen feet in length; that the top of the rails was about eight or nine inches above the top of the exposed ties, and between the ties were the unfilled spaces where the dirt had been removed. There is a direct conflict between plaintiff and defendant as to the condition of the street between the rails where the accident occurred, and from the evidence the jury was warranted in finding that the defendant had maintained a dangerous depression there, and for an unreasonable length of time, as this work had without doubt been going on for at least two weeks. The defendant practically admits the length of time it had been carrying on the work but claims it had been filling up this hole from time to time as needed; that it wanted the traffic passing over this space to pack down the crushed stone or slag before the brick pave-

ment was laid, but the evidence on behalf of plaintiff shows that traffic passed around this depression, one witness saying that automobiles, to avoid it, used the sidewalk in front of his barber shop, which was near the depression. The record shows that it paved this space the day following the accident, showing that the depression there was unnecessary.

We will take up the assignments of error in their order.

1. The defendant offered in evidence certain photographs taken some two years after the accident. These were offered on the cross-examination of the plaintiff's witness, Bower, and were let in at that stage to show the topography of the street, but though formally offered by defendant, at a later stage in examination in chief of its witness, Charles Liston, to show that the condition of the street at the time of the accident was the same as at the time the photographs were taken, the court rejected them, for this purpose, and the defendant assigns this as error. The photographs do not show when they were taken, and without oral evidence to supplement them do not furnish any evidence as to the condition of the street at the time of the accident. However, for all practical purposes they were before the jury and the defendant's witnesses were freely examined and permitted to testify that the street at the time of the accident was in the same condition or in as good condition as was shown by the photographs; so that we can not see that defendant was in any wise injured in the formal rejection of the photographs for the purpose for which they were offered. They were in to show the topography of the street and defendant used them for the purpose for which it formally offered them, besides, the plaintiff's evidence showed that the condition of the street at the time of the accident was quite different from what it was at the time the photographs were taken.

2. Defendant complains that plaintiff was permitted to show that repairs were made at the scene of the accident after the accident ocurred, but this was necessary in order to show that the street as shown by the photographs put in evidence by the defendants was not in that condition on the

day of the accident. The defendant invited this evidence by the nature of its own evidence and can not complain of it. Besides this, the defendant's witnesses were examined in chief as to what changes had been made in the street since the accident, and it has no right to complain on this point.

3. There is nothing in defendant's contention that it was error to admit in evidence the ordinance of the City of Benwood, showing the duty of defendant to keep its portion of the street in repair, nor in refusing defendant's evidence offered to show that Marshall street, was, pursuant to the Good Roads Law of 1917, taken over by the County Court of Marshall County as a Class "A" Road. The taking over of this street under the Good Roads Law did not relieve the City of Benwood or the defendant from their duty to keep the street in repair. *City of McMechen* v. *Wheeling Traction Co.,* 90 W. Va. 24, 110 S. E. 469.

4. Nor do we find error in permitting plaintiff, in rebuttal, to show that no crushed stone or slag was placed between the rails of defendant's track until after the accident, the defendant having offered evidence tending to show that for several days prior to the date of the accident it had at various times filled the depression with crushed stone or slag. As has often been said by this court, "Whether plaintiff shall be allowed to give further evidence after defendant's evidence is closed is within the discretion of the trial court; and its exercise will rarely, if ever, be the ground of reversal by an appellate court." *Perdue* v. *Caswell Creek Coal & Coke Co.,* 40 W. Va. 372, 21 S. E. 870. The defendant was in no wise surprised by this testimony and we do not consider that the court abused its discretion, even if the testimony offered was not strictly rebuttal.

5. Defendant complains particularly of plaintiff's instruction No. 2 which told the jury it might consider, in estimating plaintiff's damages, his health and condition before the injury as compared with his present condition in consequence of the injury, and also whether the injury is permanent in its nature, and how far the injury is calculated to disable him from engaging in those pursuits and

91 W. Va.

occupations for which in the absence of the injury he would have been qualified, and also the pain and suffering to which he has been subjected, and to allow such damages as in their opinion will be a fair compensation for the injury, not to exceed, however, the amount sued for. It is claimed that this instruction allows damages for plaintiff's loss of ability to earn during his minority, and that he is not entitled to recover in this action for that. The case of *Comer* v. *Ritter Lumber Co.,* 59 W. Va. 688, 53 S. E. 906, 6 L. R. A. (N. S.) 552, is cited as authority upon this point. There can be no question but that plaintiff is not entitled in this action to recover for his loss of services during his minority. The damage for this belongs to his father. But plaintiff in this action did not sue for this loss, nor, do we think, the instruction, when properly construed, told the jury that plaintiff could recover for loss of services during his minority. The instruction is very unlike the one given in the Comer case. It is also urged that the verdict is excessive and that there is no evidence touching the permanent reduction of the boy's power to earn money further than the fact of the injury itself. We can not so hold. That the boy was permanently injured is clear. His skull was fractured on the left side, between the frontal and parietal bones, requiring the removal of several pieces of bone as large as a man's thumb nail, and the attending surgeon testified that this wound never could be repaired, and that this affected his ability to resist heat and cold. He had some scalp wounds and wounds on his face and eye-brow. A cut extended through the eyebrow and upper eye-lid and his left cheek was bruised. The surgeon also testified he was not as strong as he would have been had he not been injured. The wounds were exhibited to the jury. They saw the scars, and were in position to judge from all the testimony the extent of plaintiff's injuries and whether his earning power had been decreased by reason of the injury. For such injuries we can not say the verdict is excessive.

6. Defendant's main contention is that the injury was caused not by the negligence of defendant, but by the run-

away team; that the run-away team was the proximate
cause of the injury and not the hole in the street, and we
are asked to so hold as a matter of law.  Defendant's coun-
sel cite and rely upon the case of *Hungerman* v. *City of
Wheeling,* 46 W. Va. 761, 34 S. E. 778.  But that case is
unlike this.  There a seventeen year old boy was driving a
horse in an open top buggy.  The horse had the vicious
habit of backing.  It became frightened while being driven
along a street thirty-five feet wide, stopped, and trembled
for a moment, and the plaintiff struck it with a whip.  It
then began backing, and in spite of whip and words, backed
the buggy a distance of twenty-five or twenty-six feet on the
surface of the street and then down an embankment.
Plaintiff claimed there it was defendant's duty to have
placed a guard-rail along the street.  The injury was not
due to a defect in the street,—in fact it did not occur in the
street.  The horse was known to be vicious.  It had the habit
of backing.  The driver there was negligent.  The court
could say that a sufficient time had elapsed between the time
the horse became frightened and the time of the injury to
enable a man of ordinary prudence to regain control over it.
It is quite different in this case.  Here it is shown that prior
to the injury the team was quiet and gentle.  There is no
evidence that it ever got scared or ran away before that.
True, it did so afterward, but it is well known that when a
team becomes scared and runs away once, it is very likely to
do so again.  The fact that it afterward scared and ran away
is no evidence that it was not a gentle and reliable team
before.

But defendant insists that as a matter of law we must say
that a sufficient time elapsed between the time the team
scared and the time the wagon upset to enable the boy's
father to regain control of his team, and that if so, defend-
ant is not liable.  We can not so hold.  True, it is shown that
the wagon was drawn about ten yards during this period.
But how long would it require a frightened team to go that
distance?  Probably, not more than two seconds.  In the
Hungerman case the horse was backing, and obviously it

would take it longer to back twenty-five feet than it would require a team to go forward thirty feet. It is clearly shown that the driver could have regained control of his team had he had time, and would have done so had it not been for the defect in the street. His loss of control was but momentary, as in the case of *Rohrbough* v. *County Court,* 39 W. Va. 472, 20 S. E. 565, and *Rucker* v. *City of Huntington,* 66 W. Va. 104, 66 S. E. 91, 25 L. R. A. (N. S.) 143.

Under these circumstances, we think the proximate cause of the injury was the defect in the street and not the runaway team. We, therefore, affirm the judgment.

*Affirmed.*