Staples, J.,
delivered the opinion of the court.
The court is of opinion, that although a deed or other instrument may be reformed, when through mistake or accident it does not accurately represent the agreement of the parties, it is necessary that both the agreement and the mistake shall be made out by the clearest and most satisfactory testimony. Where the mistake is established by other preliminary written agreements, equity more readily interferes than in cases where the mistake is to be established by parol evidence. But even where there is a preliminary article of agreement or settlement, it must be made plainly to appear that the parties intended in their final instrument merely to carry into effect the con *361 trol or arrangement set forth in the prior agreement. The very circumstance that the final instrument of conveyance differs from the preliminary contract, affords of itself some presumption of an intentional •change of purpose or agreement, unless there is some recital in it, or some other attendant circumstance, which demonstrates that it was merely in pursuance •of the original contract. Story’s Eq. Ju., § 160; Leas’ ex’or v. Edison, 9 Gratt. 277; Mauzy v. Sellars, 26 Gratt. 641.
In leading cases in equity, vol. II, part I, page 980 (E. 1877), the rule is thus expressed. The burden of proof is throughout on the complainant, who must rebut the presumption that the writing speaks the final agreement by the clearest and most satisfactory evidence. It must not only appear that the parties entertained a different intention in the first instance, but that it was not changed at or before the execution of the instrument; for otherwise, the legal and natural inference is, it was laid aside for that expressed in the writing.
The court is further of opinion, that applying these principles to the case before us, there is no error in the decree of the circuit court. According to the memorandum or articles of agreement, entered into •on the 12th March 1844, it was provided that the deed of trust to be executed by the appellee, McArtor, to •secure the payment of the purchase money due his vendor, Richard De Butts, was also to include the amount of the Kerchival bonds. That deed was not executed until the 18th of December 1844. It does provide for the payment of $6,000, part of the purchase money, but it makes no provision for the Kerchival bonds. It makes no reference whatever to them. Whether this omission was accidental, or whe *362 ther the parties were satisfied the Kerchival bonds-were already amply secured by deed of trust, it is-impossible to say. As has been already said, the presumption is, that the deed speaks the final agreement of the parties. It devolves upon the appellant to rebut that presumption by satisfactory evidence. It is incumbent upon him to show that the intention expressed in the memorandum was not changed before the execution of the deed. As one or the other must be held to express the true agreement, the legal and natural inference is, that the one last executed is the proper one. There is nothing in the deed to rebut this inference. Had the recitals therein made disclosed a purpose to provide for the payment of the-purchase money, there would be greater reason to conclude the omission was accidental. But nothing is-said about purchase money. All the provisions relate-to a bond of $6,000; the date, time and mode of payment of which are minutely stated. From all which it may be fairly concluded that the parties in preparing and executing the deed had reference to the-original agreement, were then fully apprized of all its-terms, and waived the provision touching the Kerchival bonds.
The only testimony adduced by the appellant, to-controvert the correctness of this view, is found in the deposition of Edward Hall, the father-in-law of De Butts. This deposition was taken in the absence of the opposing party and his counsel, upon three days’ notice given to a daughter of McArtor in his absence,, without explanation, and all the interrogatories and answers alleged to be wholly in the handwriting of counsel. The deposition was excepted to upon these grounds. Whether the exceptions were ever called to-the attention of the court below, or were passed upon., *363 does not appear. Waiving any inquiry upon those points, and giving to the appellants the benefit of the evidence, it is altogether insufficient to establish the - alleged mistake, especially against the positive denials of the answer. The deposition was taken twenty-two years after the date of the contract, and relates to transactions, the most material of which occurred in the absence of the witness, and of which he had no personal knowledge. He does not pretend that Mc-Artor’s attention was called to the mistake, or that the latter had ever admitted a mistake was committed in the preparation and execution of the deed of trust. He does say that when he, the witness, saw the deed of trust, shortly after its execution, he called attention to the omission, and was told it made no difference, as the contract was a sufficient guarantee for the payment of the Kerchival bonds. If this be so, it ■may serve in some measure to explain the reasons influencing the parties in confining the deed as a security for the $6,000 bond.
Notwithstanding the appellants, or those under whom they claim, had actual notice of the alleged mistake as far back as January 1845, no suit was brought, and no claim was ever asserted to have it corrected until the year 1858, a period of fourteen years, when this bill was filed. Ho excuse is given or attempted for this long delay. This is the more surprising, because, as early as 1852, the property conveyed to secure the payment of the Kerchiyal bonds was sold, and an amount realized from the sale sufficient to pay only about one-third of the debt. And yet with full knowledge of this deficiency the parties delayed the assertion of this claim for nearly six years. There is but one satisfactory theory upon which such conduct can be explained. At the time the deed of *364 trust was executed, the property pledged for the payment of the Kerchival bonds was, on all hands, regarded as sufficient for that purpose. As by the contract of sale and assignment De Butts became the owner of the bonds, and entitled to the deed of trust, with the privilege of enforcing the same at his plear sure, it might- well be that he was content with the security thus given him, while McArtor, on the other hand, was unwilling to subject his own property to the hazards of any delay on De Butts’ part in collecting the Kerchival bonds. "When, therefore, the deed of trust was to be given, no provision was inserted in it for their payment. If such was the view taken, the result fully justified the caution of McArtor. The Kerchival property was at the time amply sufficient for the payment of that debt; and yet in consequence of De Butts’ delay in enforcing the collection, the property, from mismanagement or other causes, became so impaired in value, that when the sale was made in 1852, De Butts himself being the purchaser, it brought but one-third of its original value. This of itself would be sufficient to prevent the interposition of a court of equity in correcting the mistake, even if clearly established. A party having a just claim to invoke the jurisdiction of that court upon equitable grounds, must exercise reasonable diligence in' the assertion of his demands. If by his laches injustice may be done the defendant the court declines to interfere. And this principle is justly applied to bills to reform contracts on the ground of mistake as to other cases.
The court is therefore of opinion there is no error in the decree of the circuit court, and the same must •be affirmed.
Decree arrirmed.