## CONNOLLY, Jr., vs. STRAW and others.

*November 29 — December 13, 1881.*

ATTORNEYS-AT-LAW: *(1, 2) Not to be discredited as witnesses because of their profession.*

WAIVER OF EXEMPTION: *(3) Need not be shown to have been "deliberate," or with full knowledge of the law.*

1. Any party to an action is entitled to the testimony of any person who is cognizant of facts material to his case; and the witness is not to be discredited merely because he is engaged in some particular lawful avocation.

2. The four witnesses called by the appellants to establish a material fact in this case, were all attorneys-at-law. One of them was one of their attorneys of record; but, when it was determined that his testimony was material to his clients, the defense of the action on the trial was entrusted to another member of the bar, not theretofore concerned in the case. Two others had been clerks in the office of the appellants' attorneys during the transactions out of which the action arose, but were not attorneys in the case; and the fourth was attorney for a party whose interests were adverse to those of the appellants. The judge, in charging the jury, remarked that he "did not know that any court had ever decided that a lawyer cannot tell the truth, but the courts have always deprecated the fact of attorneys being witnesses in a case." He then added other remarks from which the jury might naturally infer that the several attorneys who had testified for appellants had acted unprofessionally in so doing. *Held*, misleading and erroneous.

3. In replevin, where the sole question of fact was, whether the respondent had pledged the goods to the appellants, and thereby waived his right to them as exempt from execution, an instruction that if respondent had not made "a fair, square, *deliberate* waiver, *understanding fully the pledging in the law* of this property," he could recover, *held* misleading and erroneous.

APPEAL from the Circuit Court for *Milwaukee* County.

The circumstances out of which this action arose, are briefly as follows: In 1879 the firm of Connolly & Matzek, of which the plaintiff was a member, were retail dealers in hats, etc., in the city of Milwaukee, and were indebted for merchandise to the defendants, constituting the firm of Straw, Ellsworth & Brandt, of that city. The latter firm commenced an action for their debt against Connolly & Matzek, and sued out an attachment, by virtue whereof the sheriff seized the entire stock in trade of the debtors. The action was prosecuted to judgment and execution, and the stock so seized, except the goods in controversy in this action, was sold under the execution. The proceeds of the sale were not sufficient to pay the judgment. The deficiency is over $200. Between the seizure and the sale, the present plaintiff selected from the stock goods of the value of $200, which he claimed were exempt by law from seizure and sale, and placed the same in the store of the judgment creditors, who are the present defendants. After the sale of the balance of the stock, the plaintiff demanded such goods of the defendants, but they refused to surrender the same to him until he should pay the amount remaining unpaid on their judgment against Connolly & Matzek. The plaintiff thereupon brought this action to recover the possession of the goods.

The testimony given on the trial on the part of the defendants tended to show that they denied the plaintiff's right to any exemptions in the stock seized by them, and allowed him to select a portion of the stock only upon condition that he would pledge the goods selected as security for any deficiency

that might remain, after applying upon their judgment the proceeds of the sale; and that the plaintiff agreed to such condition, and deposited the goods with the defendants pursuant thereto. The testimony of the plaintiff tends to show that the goods were not thus pledged, but were placed in the store of the defendants merely for storage. All of the witnesses for the defendants, whose testimony tended to prove that the goods were thus pledged, were attorneys-at-law. The plaintiff alone testified to the contrary. The circuit judge instructed the jury as follows:

"The only important fact for you to settle here is the question as to whether *Mr. Connolly* has, in a legal and proper manner, so as to divest himself of any right to this exempt property, turned it over as a pledge to the creditors, the defendants in this case. There is no doubt in the law that a man may do it; and, if he does it fairly, freely, and understanding what he is doing, it is a waiver of his right to exemption.

"In this case it seems that the creditors had these goods, that were claimed to be exempt, in their possession under an attachment, and there was nothing more done with them, except simply separating some part of them and putting them back again into the plaintiff's possession. You have heard *Mr. Connolly's* statement of the matter. He says he sent them down there for safe-keeping, and claims that he never turned them out at all in any way, and received nothing for them, but claims that he had a title and right to these exemptions. On the other hand, the defense engaged in the collection of this claim, have testified to a different state of facts. [Some comment has been made here about the fact that three or four attorneys have been witnesses in this case. I do not know that any court has ever decided that a lawyer cannot tell the truth; but the courts have always deprecated the fact of attorneys being witnesses in a case. It is regarded unprofessional; not but what attorneys may necessarily and occasionally be witnesses, but, if they are witnesses generally, they

put themselves in the position of the parties, and they become parties in testifying in the case, and the courts look upon that not as to their testifying falsely but unprofessionally; and I would say in the presence of the bar here to-day, that I think it would be better for the profession at large that attorneys would so manage their cases that they would not have to come into court to swear them through.] I mean to say, it does not follow that they do not tell the truth, by any means. I don't refer to it in that respect at all. I refer to it more for the purpose of correcting a practice which is deprecated by the courts.

"This is simply a question of fact for you to decide, and that is all there is of it. [If there has not been a fair, square, deliberate waiver, understanding fully the pledging in the law of this property, then the plaintiff can recover]; but if he has done it fairly, squarely and deliberately, as the defendants here claim, then, as a matter of course, he cannot recover. That is all there is of the case."

Due exceptions were taken to the portions of the charge included in brackets. There was a verdict and judgment for the plaintiff; and the defendants appealed.

For the appellants there was a brief by *Williams & Elliott,* and oral argument by *Mr. Williams.*

For the respondent there were briefs by *Geo. W. & Chas. W. Lakin,* and oral argument by *Geo. W. Lakin.*

Lyon, J. The controlling question of fact litigated on the trial was: Did the plaintiff pledge the goods in controversy to the defendants, to secure payment of the balance of the judgment which remained unpaid after application of the proceeds of the execution sale? The only witnesses called by defendants, whose testimony tended to prove the affirmative of this question, were lawyers. These were Messrs. Williams, Dey, Friend and Ryan. The first was one of the attorneys of record in the case, but (as was stated in argument and not

denied) his testimony was deemed material to his clients, and the defense of the action on the trial was entrusted to another member of the bar, not theretofore concerned in the case. Messrs. Dey and Friend were clerks in the office of defendants' attorney during the transactions out of which the action arose, but were not attorneys in the case. Mr. Ryan was the attorney of Matzek, the partner of the plaintiff, retained to secure his exemptions out of the same stock of goods. Such being the profession of the witnesses, and their relations to the case, we are required to determine whether the comments on their testimony, which the learned circuit judge addressed to the jury, were justifiable and proper.

Regarded in the mildest and most innocent aspect which the language employed will permit, the comments of the judge are a discourse on professional ethics a breach of which may or may not involve moral turpitude, and may or may not affect the credibility of the witness. As a general rule, no doubt, attorneys should not be witnesses for their clients. The sentiment of the profession is opposed to it, and for very satisfactory reasons; yet cases may arise, and in practice often do arise, in which there would be a failure of justice should the attorney withhold his testimony. In such a case it would be a vicious professional sentiment which would deprive the client of the benefit of his attorney's testimony. The attorney must decide for himself whether he ought to become a witness. If he resolves the question in the affirmative, a nice sense of professional propriety will no doubt prompt him to do as Mr. Williams did in the present case; that is, surrender the management of the case to others. Of course, an attorney should not accept a retainer if he knows in advance that he will be a material witness for the party seeking to employ him. But a breach of professional ethics in this respect does not necessarily involve moral turpitude or affect the credibility of the attorney who thus becomes a witness for his client. In such case, as in all other cases, the jury may consider the re-

lations of the witness to the parties in determining the weight which should be given to the testimony. The court may properly so instruct the jury in any case, but the jury should not be instructed that the fact that an attorney testifies as a witness for his client necessarily impairs the credibility of the witness.

We do not say that the judge intended to instruct the jury that the credibility of Mr. Williams was necessarily impaired because he was an attorney of record in the case; yet we think the jury may have so understood him from the general tenor of his remarks on the subject. Considering the remarks of the judge as they affected or may have affected the testimony of the witnesses for the defendants other than Mr. Williams, they are still more objectionable. These witnesses were not attorneys in the case, and one of them, Mr. Ryan, had been retained by Mr. Matzek to secure his exemptions out of the stock in trade of Connolly & Matzek. His retainer, therefore, was hostile to the defendants, who had seized such stock. Yet the judge placed all of these witnesses on the same footing with Mr. Williams, and instructed the jury in the most general terms that " the courts have always deprecated the fact of attorneys being witnesses in a case;" that it is regarded as unprofessional; and that if they do become witnesses they put themselves in the position of parties. Now, it may be that the court intended in the remarks two qualifications, neither of which is expressed, to wit: (1) That the case mentioned is one in which the witness is an attorney; and (2) that the witness is called to the stand by his client. But the jury might well have understood the remarks to apply without qualification to all lawyers alike, as the language imports. The jury would be the more likely to so understand the charge from the fact that the judge mentions the circumstance that "three of four attorneys have been witnesses in this case," and does not discriminate between Mr. Williams and the others in his strictures upon them.

Connolly, Jr., vs. Straw and others.

The effect of the charge was, we think, or at least might have been, to discredit and impeach witnesses merely because they were lawyers. The remark addressed to the jury, " I do not know that any court has ever decided that a lawyer cannot tell the truth," when considered in the light of the whole tenor and spirit of the judge's discourse on the subject, would naturally tend to discredit the witnesses because of their profession. It seems scarcely necessary to say that any party to an action is entitled to the testimony of any person who is cognizant of facts material to his case, and when the party procures the testimony of a witness, such witness should not be discredited merely because he is engaged in some particular avocation, if it be a lawful one. Whether the witness be a mechanic, a merchant, a farmer, a lawyer or a clergyman, unless his credibility be impeached by some of the methods sanctioned by law, he is to be believed. The remarks of the judge, with proper qualifications and limitations, might very properly (if occasion called for them) have been addressed to the bar of his circuit, and, no doubt, would have been kindly received. But in this case they were addressed to the jury, and were not properly qualified and limited. Their direct tendency was to impeach all of the defendants' witnesses for a cause not recognized by law as ground for discrediting a witness. In this respect, therefore, the charge was erroneous, and it is manifest that the error may have prejudiced the defendants.

2. The instruction that, " if there has not been a fair, square, deliberate waiver, understanding fully the pledging in the law of this property, then the plaintiff can recover," is also objectionable. If the plaintiff pledged the goods in controversy to the defendants as security for the sum which might remain unpaid on their judgment after applying the proceeds of the execution sale, he was not entitled to recover. That is the issue. Yet, under the instruction, the jury may have found that the plaintiff did so pledge the goods, but, because he dealt

at a disadvantage in that the defendants were his creditors and had seized the whole stock, and he could not get his exemptions out of it without a lawsuit, they may also have found that he did not pledge the goods *fairly, squarely* or *deliberately*. Or they may have found "a fair, square, deliberate waiver," but that the plaintiff did not fully understand the law of pledge. The plaintiff was competent to make the alleged contract, was not under any duress, and is presumed to know the law applicable to his contract. The only question is, Did he pledge the goods to the defendants, as claimed by them? If he did not, he should recover; if he did, he has no cause of action.

Other questions were discussed by counsel, but it is not found necessary to determine them.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.