MATTHEW EDMISTON, JR., *Executor, Etc., et al.*

*v.*

JESSE WILSON, *et al.*

(No. 12052)

Submitted April 18, 1961.     Decided June 27, 1961.

512

*Woodroe, Kizer & Steed, W. M. Woodroe, W. H. Steed,* for appellants.

*Steptoe & Johnson, James M. Guiher, Myron B. Hymes, O. E. Wyckoff,* for appellees.

HAYMOND, PRESIDENT:

This suit in equity was instituted in the Circuit Court of Upshur County on October 13, 1957. The original plaintiffs, Matthew Edmiston and Maude C. Bassel, both of whom are now deceased and who will be referred to as the plaintiffs, brought this suit for the purpose of obtaining a decree to reform and rectify a deed made by the plaintiffs to the defendants, Jesse Wilson and Julia Wilson, who will sometimes be referred to as the defendants, on the ground of mutual mistake by the scrivener in drafting the provisions which reserved certain rights in the grantors to transport coal over the land conveyed which consisted of a tract of 6.42 acres of surface adjacent to and lying between the main line of the Baltimore and Ohio Railroad Company and U. S. Highway No. 33 in Upshur County. The deed was dated January 12, 1951, was executed and acknowledged by the plaintiffs on that date, was delivered to the defendants on January 13, 1951, and was recorded in Upshur County on January 26, 1951.

By deed dated November 3, 1952, the plaintiffs granted and conveyed to Reppert Coal Mining Com-

pany for the consideration of $11,100.00 a tract of 14.885 acres and an easement or right of way on and over the tract of 6.42 acres to make certain improvements and construct railroad tracks necessary for the purpose of transporting coal to be mined and produced by the owner of such easement or right of way, which easement or right of way was later assigned to the defendant, Reppert Fairmont Coal Company, sometimes referred to as the defendant, and it has mined, produced and transported its coal upon and over the tract of 6.42 acres since April 1953. The tracts of 6.42 acres and 14.885 acres were a part of a large tract, sometimes referred to as a farm, which originally contained approximately 705 acres, on which the plaintiff Matthew Edmiston resided, including the coal within and underlying it, the greater portion of which was located northwest of U. S. Highway No. 33.

The case was heard upon the bill of complaint and its exhibits, the answer of the defendants, Jesse Wilson and Julia Wilson, and its exhibits, the answer of the defendant Reppert Fairmont Coal Company, the motion of the defendants Jesse Wilson and Julia Wilson to dismiss the defendant Reppert Fairmont Coal Company from the case, the demurrer of that defendant to such motion, and the depositions of witnesses in behalf of the respective parties and exhibits filed and introduced with the depositions.

The suit was revived in the name of Matthew Edmiston, Jr., as Executor of Matthew Edmiston and as Executor of Maude C. Bassel, and by final decree entered October 24, 1959, the circuit court held that the scrivener in preparing the deed made a mistake in expressing the true intention of the parties as to the reservations in favor of the grantors concerning the easement claimed by them and the sidetracks proposed to be constructed by the grantees; that the mistake was mutual; that it was the intention of the parties to the deed, at and prior to its execution, that it should reserve and except unlimited and unrestricted rights in the grantors in and to the easement and the railroad

siding and sidetracks proposed to be constructed and actually later constructed by the grantees, the defendants Jesse Wilson and Julia Wilson; and that the deed should be, and it was, reformed and rectified to conform to and express the true intention of the parties and to reserve to the grantors, the plaintiffs, their heirs and assigns, the unlimited right to use the easement, railroad siding and sidetracks constructed by the grantees, the defendants Jesse Wilson and Julia Wilson, without limitation as to the ownership of coal and other materials to be transported on and over the tract of 6.42 acres of land; and that the plaintiffs should recover their costs from the defendants Jesse Wilson and Julia Wilson.

To the final decree this Court granted this appeal and supersedeas upon the application of the defendants Jesse Wilson and Julia Wilson on July 6, 1960.

During the month of May 1950 the defendant Jesse Wilson went to Edmiston's home for the purpose of purchasing from him the tract of 6.42 acres abutting on the railroad which Wilson desired to acquire for the construction of a tipple and sidetrack in connection with the mining and transportation of coal to be produced by Wilson who at the time he testified in 1958 had been a coal operator for about fourteen years. The line of the railroad company terminated near the Edmiston tract and the only practical route for the transportation to the railroad of the coal to be produced from that tract and other nearby tracts of land northwest of the Edmiston tract in the area of Mudlick Run, which according to Edmiston consisted of several thousand acres, was over a portion of the Edmiston tract. It appears that for this reason Edmiston considered it highly important that in any conveyance of any portion of his tract of land the right to transport his coal and the coal from other lands should be reserved to the grantors.

During the initial negotiations Edmiston insisted that in any conveyance the grantors would reserve the

unrestricted right to use any sidetrack which Wilson would construct on the land conveyed and, according to Edmiston, he told Wilson that he would not sell the land if there should be any restriction upon the transportation rights of the grantors, that there should be reserved the same unrestricted rights as had been reserved in prior conveyances made by Edmiston and his wife and Bassel to Knabenshue dated September 18, 1926, to Henckle and Romesberg dated October 21, 1944, and to Henckle dated June 23, 1947, for small tracts of land adjoining the railroad on which sidetracks had been constructed, and that in any deed to him for the land which Wilson desired to purchase the same unrestricted rights should be reserved to the grantors.

Sometime after the initial meeting between Edmiston and Wilson they went to the law office of U. G. Young, Jr., at Buckhannon, who represented Edmiston as his attorney, and the terms of the proposed conveyance were discussed. At that time Young made some preliminary notes but he did not then prepare a draft of the proposed deed. Wilson did not want to conclude the purchase until he received approval from the railroad company of his plans for the construction of a sidetrack but at that conference he delivered a check for $5,500.00, the agreed purchase price, to Young to be retained by him until the purchase was finally completed and at that time the check was to be delivered to the plaintiffs. Edmiston wanted to close the transaction during the year 1950 but the railroad company did not forward to Young, its local attorney, its written permission, dated January 3, 1951, for Wilson to construct the sidetrack, until several days after that date, for delivery to Wilson.

On January 4, 1951, Wilson went to Young's office and at that time Young prepared the first draft of the proposed deed which contained a reservation which only permitted the grantors to transport coal and other materials from their other lands over the 6.42 acres. When Wilson left the office he took the draft with

him, apparently for the purpose of further considering its provisions. The next day he returned to Young's office with the draft and suggested some changes, one of which was that his wife Julia Wilson should be named as a grantee and another was that the deed should contain a provision which would permit him to obtain earth from the Edmiston tract for use in constructing a fill for the proposed sidetrack.

On January 11, 1951, after Young had informed Wilson that he had received the permit from the railroad company, Wilson and Edmiston came to Young's office for a final conference concerning the proposed deed, the initial draft of which Edmiston had not previously seen or examined. At that conference both Wilson and Edmiston desired changes with respect to certain matters and those changes were agreed to and embodied in the final draft. Edmiston objected to the reservation in the initial draft which limited the right of the grantors to the transportation of coal and other materials from their other lands. In the preparation of the deed Young acted as attorney for Edmiston and Edmiston paid Young's fee for writing the deed.

Young instituted and conducted the case as counsel for the plaintiffs, examined the plaintiff Matthew Edmiston and other witnesses in behalf of the plaintiffs and cross-examined the defendant Jesse Wilson. He withdrew from the case at the conclusion of the testimony given by the defendant Jesse Wilson and then became a witness in behalf of the plaintiffs. Concerning the conference on January 11, 1951, he testified that Wilson stated that he was not interested in the use of the sidetrack by Edmiston and was interested only in Wilson's right to use the sidetrack for the transportation of coal produced by him. Young also testified that Edmiston and Wilson agreed that the right of the grantors to use the sidetrack was to be unrestricted; that Young then added at the end of the deed, in the belief that it would eliminate any objection and would constitute an unrestricted reservation, the provision which remained in the deed in its final form that

"It is further expressly understood that in the use of the words 'grantors' and 'grantees' as used herein, it shall be construed in each instance to mean either the grantors or the grantees heirs or assigns." Young further testified that he advised both Edmiston and Wilson that the added provision would satisfy any objection by Edmiston with respect to the unrestricted right which he sought to have reserved; that both Edmiston and Wilson understood that it would have that effect; and that Young thought the provision "would take care of the entire situation, that there would never be any trouble over it, and felt that way about it at the time."

In answer to questions propounded to him by the attorney who succeeded him as counsel for the plaintiffs, Young also gave this testimony:

"Q. What was Mr. Wilson's statement if any as to his understanding of the matter?

"A. Mr. Wilson agreed with Mr. Edmiston when Mr. Edmiston asked him was that not our original understanding, and I told you I wanted to make the same reservations similar to the other deeds?, and Mr. Wilson said, yes, that was the understanding; and I asked both of them if they understood it that way, and they said that they did, and I assumed that would end the whole thing.

"Q. Did they accept your interpretation of the effect of the paragraph which you put at the end of the original deed?

"A. They did."

He also gave this answer to a question propounded on cross-examination by the attorney who represented the defendants Jesse Wilson and Julia Wilson in the trial court:

"A. Mr. Robinson, in answer to that question, as I stated, this question of his unrestricted rights, referring to Edmiston, was brought up at the time, and I

checked with both of them as to what those intentions were, and they both agreed that there was to be unrestricted use as far as Edmiston was concerned, and he could assign it, and then I went ahead and attempted to clarify that by doing the last paragraph and transferring the last sentence made on January 5 to comply with that intention. They both agreed to it, and later Jesse Wilson contends through his counsel that that was not his intention. That is where the mistake was made, and I state to you that as I know now I probably would have gone back and rewritten the whole thing and taken the time, but I did not do it, and they agreed to it, and I feel that even now possibly I should have rewritten the whole thing, but that is my mistake if you call it that."

He also stated in his answer to a question propounded on cross-examination that "You can now show me where I should have handled it differently, but that was what I was thinking was his intention then to take care of his own coal lands, and that was one of the things that Mr. Edmiston objected to, and that was one of the things we cleared with Mr. Wilson when he was in my office on the eleventh."

After Young withdrew as counsel and testified as a witness he made no further appearance in the case and he died before it was submitted to and decided by the circuit court in October 1959.

Edmiston testified to the same effect as Young with respect to Edmiston's insistence that the right to be reserved to the grantors should be unrestricted; that it was the intention of Edmiston and Wilson that such right should be unrestricted; and that Wilson understood and agreed that the deed would reserve such unrestricted right to the grantors.

In his testimony the defendant Jesse Wilson insisted that the reservation in the deed which restricted the right of the grantors to the transportation of coal and other materials from their other lands expressed the actual agreement between the parties to the deed. He

testified that though he examined the reservations in the prior deeds at the courthouse he understood that the right reserved in those deeds was for the transportation of the coal of the grantors, and he denied that he had agreed that the language incorporated in the final draft of the deed by Young was intended by him to reserve to the grantors the right to transport coal other than that owned by them over the 6.42 acres conveyed to him by the plaintiffs.

Before Reppert Coal Mining Company purchased the 14.885 acres from the plaintiffs a representative of that company inquired of Edmiston concerning the title of the plaintiffs and their right to convey that land and an easement on and over the 6.42 acre tract to make certain improvements and construct railroad tracks necessary for the purpose of transporting coal to be mined and produced by the owner of such easement or right of way and Edmiston and Young both assured the representative of that company that the plaintiffs had the right to convey such land and such easement on and over the 6.42 acre tract.

After the deed from the plaintiffs to Reppert Coal Mining Company dated November 3, 1952, its assignee, the defendant Reppert Fairmont Coal Company, engaged in the development of a large tract of coal containing approximately three thousand acres, located northwest of the lands of the plaintiffs and on both sides of Mudlick Run which intersects with U. S. Highway at a point about one thousand feet from the Wilson sidetrack on the 6.42 acre tract. That coal had previously been sold at public sale at the courthouse of Upshur County under a deed of trust and purchased by a company which apparently was owned or controlled by the same persons who owned or controlled the defendant Reppert Fairmont Coal Company; and prior to April 1953, when it began to transport coal from its large tract of approximately three thousand acres over the 6.42 acre tract, a tipple, a tramroad and a sidetrack in connection with its mining

operation were constructed on the 14.885 acres which the plaintiffs had conveyed by the deed of November 3, 1952. The tipple was located across the highway from and north of the 6.42 acre tract and at a distance of approximately 1700 feet. The tramroad was constructed north of the tipple for a distance of two or three miles to the mine opening on the large tract of coal. The sidetrack extended from the tipple across the highway to and over the 6.42 acre tract and connected with the Wilson sidetrack on the 6.42 acre tract. The tipple, the sidetrack and several hundred feet of the tramroad were clearly visible from the 6.42 acre tract, and the defendant Jesse Wilson observed and knew that large quantities of coal were transported from that operation over his 6.42 acre tract of land. He stated, however, that he thought the coal was being mined from the Edmiston tract and did not know until the fall of 1953 or the fall of 1954 that it was mined from the tract of approximately three thousand acres. The Reppert operation, which represents an investment in improvements, installations and facilities of a sum in excess of one million dollars, was the largest coal producing operation in Upshur County.

During the period from January 1951 to December 1956 the defendant Jesse Wilson had at least two conversations with Edmiston at his home in which a refund to Wilson of a portion of the construction cost of his sidetrack on his 6.42 acre tract and a purchase by Wilson of some coal from Edmiston were discussed. During the same period the defendant Jesse Wilson had at least one conversation with Alfred R. Reppert, President of the defendant Reppert Fairmont Coal Company, at his office in Clarksburg, concerning a possible sale by that company as a broker of some of the coal produced by Wilson. In those conversations, however, the defendant Jesse Wilson did not complain about the coal being transported over the 6.42 acre tract by the Reppert Fairmont Coal Company or make any inquiry as to the ownership of the coal or the source of its production.

In December 1956, however, the defendant Jesse Wilson for the first time, by letter dated December 21, received by Alfred R. Reppert as President of the defendant Reppert Fairmont Coal Company on December 24, and by a second letter dated January 2, 1957, and received by Reppert the following day, complained that it had been mining and processing for sometime at its tipple coal mined from lands other than the lands of Matthew Edmiston and stated that it did not have that right. When the defendant Jesse Wilson was asked on cross-examination why he waited from 1954, when he first knew that coal not produced from the Edmiston tract was transported over the 6.42 acre tract, until 1956 to mention the matter to Edmiston, Wilson replied that he thought it was "his place to come to me and not my place to contact him."

After some correspondence and discussions in which Wilson denied the right of the plaintiffs to convey and Reppert Fairmont Coal Company to use the easement over the 6.42 acre tract and Edmiston and Reppert asserted that the plaintiffs and that company had such right, this suit to reform and rectify the material provisions of the deed made by the plaintiffs to the defendants Jesse Wilson and Julia Wilson, dated January 12, 1951, was instituted in October 1957. Shortly after the institution of this suit the defendants Jesse Wilson and Julia Wilson began an action at law against the defendant Reppert Fairmont Coal Company in the Circuit Court of Upshur County to recover approximately $40,000.00 for wheelage charges, at the rate of three cents per ton, for transporting 1,340,125 tons of coal over the 6.42 acre tract during the period from June 1953 through September 1957; and that action is now pending in that court.

The principal errors assigned by the defendants as grounds for reversal of the final decree are the rulings of the circuit court (1) in finding that Young, the scrivener in preparing the deed from the plaintiffs to the defendants Jesse Wilson and Julia Wilson, dated January 12, 1951, failed to express the true intention

of the parties and that his error constituted a mutual mistake between the parties; (2) in admitting and considering parol evidence of statements and acts of the parties to the deed which occurred contemporaneously with and before and after its execution to vary or contradict its unambiguous provisions; (3) in admitting and considering the evidence of the scrivener Young who represented the plaintiffs as their attorney; and (4) in holding that the evidence was sufficient to establish a mutual mistake between the parties to the deed.

This Court has held in numerous cases that equity has jurisdiction to reform and correct a deed executed through a mutual mistake of fact to conform to the actual agreement of the parties to the deed when such mistake results from the mistake of the scrivener in the preparation of the deed. *Johnston v. Terry,* 128 W. Va. 94, 36 S. E. 2d 489; *Davis v. Lilly,* 96 W. Va. 144, 122 S. E. 444; *Stickley v. Thorn,* 87 W. Va. 673, 106 S. E. 240; *Melott v. West,* 76 W. Va. 739, 86 S. E. 759; *Hertzog v. Riley,* 71 W. Va. 651, 77 S. E. 138; *Smith v. Owens,* 63 W. Va. 60, 59 S. E. 762; *Taylor v. Godfrey,* 62 W. Va. 677, 59 S. E. 631; *Ferrell v. Ferrell,* 53 W. Va. 515, 44 S. E. 187; *Lough v. Michael,* 37 W. Va. 679, 17 S. E. 181, 17 S. E. 470; *Pennybacker v. Laidley,* 33 W. Va. 624, 11 S. E. 39; *Crislip v. Cain,* 19 W. Va. 438; *Troll v. Carter,* 15 W. Va. 567. See also *Boyd v. Pancake Realty Company,* 131 W. Va. 150, 46 S. E. 2d 633; *Dyke v. Alleman,* 130 W. Va. 519, 44 S. E. 2d 587; *Hanly v. Harmison,* 89 W. Va. 608, 109 S. E. 742; *Pickens v. Pickens,* 72 W. Va. 50, 77 S. E. 365; *Crim v. O'Brien,* 69 W. Va. 754, 73 S. E. 271; *Null v. Elliott,* 52 W. Va. 229, 43 S. E. 173; *Knowlton v. Campbell,* 48 W. Va. 294, 37 S. E. 581; *Fishack v. Ball,* 34 W. Va. 644, 12 S. E. 856; *Deitz v. Providence Washington Insurance Company,* 33 W. Va. 526, 11 S. E. 50, 25 Am. St. Rep. 908; *Creigh's Adm'r v. Boggs,* 19 W. Va. 240; *Western Mining and Manufacturing Company v. Peytona Cannel Coal Company,* 8 W. Va. 406. See *Carter v. McArtor,* 28 Gratt. 356, 69 Va. 356.

In *Johnston v. Terry*, 128 W. Va. 94, 36 S. E. 2d 489, this Court said in point 1 of the syllabus that a court of equity has power and jurisdiction to decree the reformation of a deed executed through a mutual mistake of the parties as to what is intended in the deed, or through a mistake of a scrivener in failing to make the deed express the mutual intention of the parties. In *Davis v. Lilly*, 96 W. Va. 144, 122 S. E. 444, this Court held in point 3 of the syllabus that "Generally, to warrant equity to reform a deed for mistake the mistake must be mutual; but the mistake of a scrivener in preparing a deed is regarded as the mistake of both parties, he being regarded as the agent of both." In the opinion in *Stickley v. Thorn*, 87 W. Va. 673, 106 S. E. 240, this Court used this language: "There can be no question that equity has jurisdiction to reform and correct a deed so as to make it conform to the agreement of the parties, where the scrivener in writing the deed has made a mistake." In *Koen v. Kerns*, 47 W. Va. 575, 35 S. E. 902, though it was held that the evidence was not sufficient to establish mutual mistake of the parties to the instrument, the opinion contains this quotation: "To justify the reformation of an instrument for mistake, it is necessary: First, that the mistake should be one of fact, not of law; second, that the mistake should be proved by clear and convincing evidence; third, that the mistake should be mutual and common to both parties to the instrument."

The evidence in this case shows clearly and beyond question that the mistake here involved was a mutual mistake of fact of the parties to the deed dated January 12, 1951, by which the plaintiffs conveyed the 6.42 acre tract to the defendants Jesse Wilson and Julia Wilson which resulted from the mistake of the scrivener in drafting that instrument.

Parol evidence is admissible to establish a mutual mistake in a deed or other written instrument. *Johnston v. Terry*, 128 W. Va. 94, 36 S. E. 2d 489; *Melott v. West*, 76 W. Va. 739, 86 S. E. 759; *Knowlton v. Campbell*, 48 W. Va. 294, 37 S. E. 581; *Koen v. Kerns*, 47

W. Va. 575, 35 S. E. 902; *Fishack v. Ball*, 34 W. Va. 644, 12 S. E. 856; *Deitz v. Providence Washington Insurance Company*, 33 W. Va. 526, 11 S. E. 50, 25 Am. St. Rep. 908; *Jarrell v. Jarrell*, 27 W. Va. 743; *Crislip v. Cain*, 19 W. Va. 438; *Creigh's Adm'r v. Boggs*, 19 W. Va. 240; *Allen v. Yeater*, 17 W. Va. 128; *Troll v. Carter*, 15 W. Va. 567; *Carter v. McArtor*, 28 Gratt. 356, 69 Va. 356; 7 Michie's Jurisprudence, Evidence, Section 162.

In *Johnston v. Terry*, 128 W. Va. 94, 36 S. E. 2d 489, this Court held in point 3 of the syllabus that "In a suit to reform a deed, parol testimony may be introduced to show a mutual mistake of the parties to such deed, or a mistake of the scrivener in failing to make the written instrument prepared by him conform to the intention of the parties thereto."

In *Melott v. West*, 76 W. Va. 739, 86 S. E. 759, this Court held in point 1 of the syllabus that "In a suit to correct a mutual mistake in a deed so as to make it conform to the contract between the parties, evidence of previous negotiations by or on behalf of one or more of the parties, not to vary the terms of the written deed, but as showing or as tending to show what the real contract was, is admissible and competent evidence."

Under the parol evidence rule extrinsic evidence of statements and declarations of the parties to a plain and unambiguous instrument occurring contemporaneously with or prior to its execution is inadmissible to contradict, add to, detract from, vary or explain the terms of such instrument, in the absence of a showing of illegality, fraud, duress, mistake or insufficiency of consideration. *Hartmann v. The Windsor Hotel Company*, 136 W. Va. 681, 68 S. E. 2d 34; *Kanawha Banking and Trust Company v. Gilbert*, 131 W. Va. 88, 46 S. E. 2d 225; *Central Trust Company v. Virginia Trust Company*, 120 W. Va. 23, 197 S. E. 12; *O'Farrell, Admr. v. Virginia Public Service Company*, 115 W. Va. 502, 177 S. E. 304. That rule, however,

does not apply in a proceeding to establish mutual mistake of fact in a plain and unambiguous written instrument and to reform and correct such instrument to conform to the real intention of the parties. Parol evidence to establish and correct a mutual mistake of fact in an unambiguous written instrument is admissible not because of an exception to the parol evidence rule, but because that rule does not apply to or preclude the admission of such evidence for that purpose. *Troll v. Carter,* 15 W. Va. 567. As the parol evidence rule does not apply to or preclude the statements, declarations, acts or conduct of the parties to the deed from the plaintiffs to the defendants Jesse Wilson and Julia Wilson, dated January 12, 1951, the testimony of Edmiston, Wilson and Young, the scrivener, relating to such statements, declarations, acts and conduct, being competent unless excluded by that rule, was properly admitted and considered by the circuit court.

Though parol evidence is admissible to establish mutual mistake of fact of the parties to a plain and unambiguous deed or other written instrument, the proof required to justify a court of equity to reform and correct such instrument to conform to the true intention of the parties must be strong, clear, unequivocal, preponderating and convincing. *Johnston v. Terry,* 128 W. Va. 94, 36 S. E. 2d 489; *Stickley v. Thorn,* 87 W. Va. 673, 106 S. E. 240; *Watson-Loy Coal Company v. Monroe Coal Mining Company,* 85 W. Va. 645, 102 S. E. 485; *Pickens v. Pickens,* 72 W. Va. 50, 77 S. E. 365; *Isner v. Nydegger,* 63 W. Va. 677, 60 S. E. 793; *Fishack v. Ball,* 34 W. Va. 644, 12 S. E. 856; *Pennybacker v. Laidley,* 33 W. Va. 624, 11 S. E. 39; *Allen v. Yeater,* 17 W. Va. 128; 7 Michie's Jurisprudence, Evidence, Section 163.

In *Johnston v. Terry,* 128 W. Va. 94, 36 S. E. 2d 489; this Court said in point 4 of the syllabus that ''To justify a court of equity in decreeing reformation of a deed, the evidence produced on the part of one seeking such reformation must be strong, clear and convinc-

ing.'' In other decisions with respect to the evidence required to establish mutual mistake in an unambiguous written instrument this Court has expressed substantially the same requirement in different phraseology, such as, for example, the evidence must be ''clear, positive and direct,'' in *Hanly v. Harmison,* 89 W. Va. 608, 109 S. E. 742; ''clear, convincing, and free from doubt, and not conflicting,'' in *Melott v. West,* 76 W. Va. 739, 86 S. E. 759; ''clear, convincing and free from reasonable doubt,'' in *Smith v. Owens,* 63 W. Va. 60, 59 S. E. 762; ''clear and convincing proof beyond reasonable controversy,'' in *Knowlton v. Campbell,* 48 W. Va. 294, 37 S. E. 581, and *Robinson v. Braiden,* 44 W. Va. 183, 28 S. E. 798; ''unequivocal evidence irresistibly conclusive,'' in *Jarrell v. Jarrell,* 27 W. Va. 743, and *Western Mining and Manufacturing Company v. Peytona Cannel Coal Company,* 8 W. Va. 406; and ''clear and strong, so as to establish the mistake to the entire satisfaction of the court,'' in *Allen v. Yeater,* 17 W. Va. 128. The character of the proof indicated by the foregoing expressions in the above cited cases to establish mutual mistake of the parties to an unambiguous deed or other written instrument is required because of the presumption that when a written instrument is plain and unambiguous and is complete upon its face it contains the entire agreement between and is the final act of the parties, *O'Farrell, Admr. v. Virginia Public Service Company,* 115 W. Va. 502, 177 S. E. 304; *Donato v. Kimmins,* 104 W. Va. 200, 139 S. E. 714; *Jones v. Kessler,* 98 W. Va. 1, 126 S. E. 344; *Watson-Loy Coal Company v. Monroe Coal Mining Company,* 85 W. Va. 645, 102 S. E. 485; *Isner v. Nydegger,* 63 W. Va. 677, 60 S. E. 793; and because the writing itself is regarded as evidence which can be overcome only by strong, clear, unequivocal, preponderating and convincing evidence to the contrary, *Koen v. Kerns,* 47 W. Va. 575, 35 S. E. 902; *Jarrell v. Jarrell,* 27 W. Va. 743; 7 Michie's Jurisprudence, Evidence, Sections 162 and 163.

The evidence disclosed by the record, consisting of the statements, declarations, acts and conduct of the

parties to the deed dated January 12, 1951, the testimony of the scrivener, and the surrounding facts and circumstances, is sufficiently strong, clear, perponderating and convincing to establish beyond reasonable controversy and to the satisfaction of the court a mutual mistake of the parties with respect to the transportation rights over the 6.42 acre tract of land conveyed by the plaintiffs to the defendants Jesse Wilson and Julia Wilson intended to be reserved to the grantors in the deed. Though there is some conflict between the testimony of Edmiston and Young and the testimony of the defendant Jesse Wilson concerning the intention of the parties to the deed and between his testimony and the testimony of Reppert concerning the time when Wilson learned that coal other than that owned by the plaintiffs was being transported over the 6.42 acre tract, the evidence with respect to most of the material and controlling facts is not conflicting. It is clear that the denial of the defendant Jesse Wilson that an unrestricted reservation in favor of the plaintiffs was not intended by the parties to the deed is not sufficient, in the face of the evidence to the contrary, to deprive the plaintiffs of the relief of reformation which they seek in this suit. In a suit to reform a mutual mistake in a deed, caused by the mistake of the scrivener, this Court used this peculiarly pertinent language: "If the bare denial of one of the parties to a deed, when confronted by an array of witnesses and corroborating facts and circumstances overcoming him, will cut off the relief of reformation, then a case for reformation could rarely be established except by a previous written agreement, for rarely does it occur that one of the parties to the instrument does not put in a denial. We do not believe this can be the law. The evidence for plaintiff in this case amounts we think to more than a mere preponderance; it convinces us of the certainty of the contract and of the error. The contract and the mistake is established beyond any reasonable doubt, answering all requirements of the law." *Melott v. West*, 76 W. Va. 739, 86 S. E. 759. In reforming and rectifying a mutual

mistake in a deed this Court held in point 3 of the syllabus in that case that "While in such cases the contract and the mutuality of the mistake in the deed must be established by evidence, clear, convincing, and free from doubt, and not conflicting, relief will not be denied, in a clear case, made out by overwhelming evidence, simply because one of the parties, in his evidence, controverts the fact of the mistake."

The defendants Jesse Wilson and Julia Wilson, in support of their contention that the evidence in behalf of the plaintiffs is not sufficient to establish mutual mistake of the parties to the deed of January 12, 1951, insist that the conduct of Edmiston, being an intelligent and successful man of experience in many and varied business transactions, who read and discussed the original and revised drafts of the deed before it was executed in its final form, would not have signed the deed unless he believed that it correctly expressed the actual intention of the parties to it. This contention is not well founded. It ignores and rejects the force and effect of the numerous statements of Edmiston, which were not fully denied by Wilson, that Edmiston would not sell the 6.42 acre tract without the reservation of an unrestricted right to transport coal on and over that tract of land; the testimony that Edmiston did not see or examine the original draft which Young had previously discussed with and delivered to Wilson until the conference attended by Edmiston, Wilson and Young on January 11, 1951, that when Edmiston saw the draft at that time he objected to the form of the reservation, and that because of his objection Young added the final paragraph which he believed, and told Edmiston, would reserve such unrestricted right and which Edmiston and Wilson understood and agreed would be sufficient for that purpose; and the testimony that both Young and Edmiston, in the belief that the plaintiffs by virtue of the reservation had the right to transport coal not owned by them, assured Reppert that they had such right and subsequently conveyed it by the deed dated November 3, 1952.

An attorney is a competent witness to testify in behalf of his client and, except as to privileged communications, to testify against him. In dealing with this subject, the text in 58 Am. Jur., Witnesses, Sections 152 and 153, contains these statements: ''It is settled that an attorney is a competent witness to testify in behalf of his client, or, except as to privileged communications, against him. And it would be error to exclude his testimony on behalf of his client on the ground that he is incompetent or that his testifying constitutes unethical conduct. An attorney will, so far as is consistent with his duty, decline to testify in behalf of his client, for the questions of his own credibility and of the accuracy of his statements afford for him most indelicate questions for discussion. Absolute necessity may, however, in some cases disclose the duty which the attorney cannot disregard. If called as a witness he is bound to testify. * * *. It has repeatedly been declared that an attorney, in testifying for his client on a material matter, commits a violation of professional etiquette. It is against sound principles of professional ethics for one who knows that he is to be called as a witness in a case to accept the retainer as lawyer in that case. So also, where, after retainer, it becomes apparent to an attorney that his testimony will be material in behalf of his client, and it is decided that he shall be a witness, he should immediately sever his connection with the litigation. But a breach of professional ethics in this respect does not necessarily involve moral turpitude, or affect the credibility of the attorney who becomes a witness for his client. In such case, as in all other cases, the jury may consider the relations of the witness to the parties in determining the weight which should be given to the testimony.'' The text in 97 C.J.S., Witnesses, Section 71, is to the same effect and states that an attorney is competent to testify as to matters affecting his client, although such practice is of doubtful propriety and the attorney should ordinarily withdraw before he becomes a witness.

In *Inman v. Inman,* 158 Va. 597, 164 S. E. 383, the court said: "Generally speaking, when counsel for a party to a cause finds that he is required as a material witness for his client, he should so advise his client and retire as counsel in the case. Perhaps there are cases in which an attorney may, with propriety, continue as counsel, though he has been called as a witness, but they are rare." In *French v. Hall,* 119 U. S. 152, 30 L. Ed. 375, the opinion contains these statements: "There is nothing in the policy of the law, as there is no positive enactment, which hinders the attorney of a party prosecuting or defending in a civil action from testifying at the call of his client. In some cases it may be unseemly, especially if counsel is in a position to comment on his own testimony, and the practice, therefore, may very properly be discouraged; but there are cases, also, in which it may be quite important, if not necessary, that the testimony should be admitted to prevent injustice or to redress wrong." In *Connolly v. Straw,* 53 Wis. 645, 11 N. W. 17, the court used this language: "As a general rule, no doubt, attorneys should not be witnesses for their clients. The sentiment of the profession is opposed to it, and for very satisfactory reasons; yet cases may arise, and in practice often do arise, in which there would be a failure of justice should the attorney withhold his testimony. In such a case it would be vicious professional sentiment which would deprive the client of the benefit of his attorney's testimony. The attorney must decide for himself whether he ought to become a witness."

Any practice which enables an attorney, while engaged in the prosecution or the defense of litigation, to testify as a witness in the course of such litigation is emphatically disapproved by this Court. When counsel for a party to a cause finds that he is required to be a material witness for his client he should immediately so advise his client and retire as counsel in the case. It is likely that when Young instituted this proceeding as counsel for the plaintiffs he thought,

because of his personal acquaintance with the material facts, that the defendants might not deny that a mutual mistake had occurred and that it would not be necessary for him to testify in the case. When, however, the defendants Jesse Wilson and Julia Wilson denied by their verified answer that a mutual mistake had occurred, he should have known that he might be called to testify as a witness and at that time he should have withdrawn from the case. It is evident, however, that he did not believe or fully realize that he would become a witness, as he himself declared, until after the defendant Jesse Wilson had concluded his testimony; and at that time, when Young realized that it was his duty, in view of the testimony that had then been introduced and the death of Edmiston before Wilson testified, to become a witness in behalf of the plaintiffs, he immediately withdrew and ceased to act as counsel in the case. In the circumstances with which he was confronted it can not be said that his conduct was professionally unethical. But however his conduct may be judged or regarded, a question not specifically determinable on this appeal, he was competent to testify as a witness, his testimony was admissible, and it was the province of the trial chancellor to determine its weight and credibility.

The contention of the defendants Jesse Wilson and Julia Wilson that it was error to admit and consider the testimony of Young because it was not introduced until after the other testimony introduced by the plaintiffs had been concluded and until after Wilson had completed his testimony in the case is devoid of merit. Young's testimony, being mainly evidence in chief, instead of rebuttal, in behalf of the plaintiffs, which ordinarily should have been introduced before the introduction of the evidence in behalf of the defendants, the admission and the consideration of Young's testimony, in the unusual circumstances disclosed by the record, were within the discretion of the circuit court and its action in admitting and considering his testimony did not constitute prejudicial error. *Goodwin*

*v. Tony Pocahontas Coal Company,* 88 W. Va. 49, 106 S. E. 76. As a general rule, the conduct of trials and the order of introducing testimony, subject to well established rules of practice and procedure, rest within the sound discretion of the trial court and that rule is applicable to the admissibility of evidence in rebuttal which could and should have been introduced by the plaintiff in chief. *Farley v. Farley,* 136 W. Va. 598, 68 S. E. 2d 353; *Keatley v. Hanna Chevrolet Company,* 121 W. Va. 669, 6 S. E. 2d 1; *Weaver v. Wheeling Traction Company,* 91 W. Va. 528, 114 S. E. 131; *State v. Williams,* 49 W. Va. 220, 38 S. E. 495; *Clarke v. Ohio River Railroad Company,* 39 W. Va. 732, 20 S. E. 696; *Johnson v. Burns,* 39 W. Va. 658, 20 S. E. 686; *Lewis v. Alkire,* 32 W. Va. 504, 9 S. E. 890; *Bowyer v. Knapp and Martin,* 15 W. Va. 277. Whether a plaintiff will be allowed to introduce further evidence after the evidence in behalf of a defendant is concluded is ordinarily within the discretion of the trial court, and the exercise of such discretion will rarely constitute ground for reversal. *Farley v. Farley,* 136 W. Va. 598, 68 S. E. 2d 353; *Weaver v. Wheeling Traction Company,* 91 W. Va. 528, 114 S. E. 131. The testimony of Young, though offered in rebuttal, was in large measure merely cumulative of the testimony offered by the plaintiffs in chief, and its admissibility is within the sound discretion of the trial court. *Farley v. Farley,* 136 W. Va. 598, 68 S. E. 2d 353; *Elswick v. Charleston Transit Company,* 128 W. Va. 241, 36 S. E. 2d 419. It does not appear that the trial court abused its discretion in admitting and considering the testimony given by Young.

From all the evidence in the case the circuit court has found that a mutual mistake of fact between the parties to the deed dated January 12, 1951, occurred because of the mistake of the scrivener in the preparation of the deed and that it should be reformed and rectified to conform to the actual agreement of the parties to the deed that it should have reserved to the plaintiffs the unrestricted right to transport coal

upon and over the 6.42 acre tract; and that finding, being amply supported by competent evidence which is strong, clear and convincing, will not be disturbed on this appeal.

The judgment of the Circuit Court of Upshur County is affirmed.

*Affirmed.*